STATE of Iowa, Appellee,

v.

Milton Sylvester JONES, Appellant.

No. 91–1321.

Supreme Court of Iowa.

July 22, 1992.

Rehearing Denied Sept. 25, 1992.

788

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Roxann M. Ryan, Deputy Atty. Gen., William E. Davis, County Atty., and James Hoffman, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ and ANDREASEN, JJ.

ANDREASEN, Justice.

The defendant in a child sexual abuse case appeals his conviction on the grounds that the court improperly excluded evidence. He challenges the jury venire on both constitutional and statutory grounds. Defendant also alleges that his trial counsel was ineffective. We affirm the judgment entered upon the conviction.

I. *Background.*

Milton Jones was charged and convicted of sexual abuse in the third degree. Iowa Code § 709.4 (1987). The charge and conviction resulted from his sexual contact with a child; a ten-year-old girl. Iowa Code §§ 702.5; 709.4(3).

Prior to trial, Jones challenged the make-up of the jury panel and requested that certain evidence be admitted as an exception to Iowa Rule of Evidence 412. Judge Margaret S. Briles denied the evidentiary motion and set the challenge to the jury panel for hearing. The hearing took place on the morning of the trial. Following the hearing, Judge Edward deSilva denied the challenge to the jury panel. The case was then tried to a jury. Judge deSilva entered a judgment of conviction upon the jury's verdict of guilty, and Jones was sentenced to a term of confinement not to exceed ten years. Jones appealed.

II. *Scope of Review.*

When reviewing a trial court's rulings on admissibility of evidence, we use an abuse-of-discretion standard. *State v. Alvey,* 458 N.W.2d 850, 852 (Iowa 1990). Our review of constitutional questions is de novo. *State v. McKettrick,* 480 N.W.2d 52, 55 (Iowa 1992). Statutory challenges are reviewed for errors of law. *State v. Stoneking,* 379 N.W.2d 352, 354 (Iowa 1985).

III. *Exclusion of Evidence Under Iowa Rule of Evidence 412.*

Jones filed a pretrial motion under Iowa Rule of Evidence 104 to secure a ruling that evidence of prior sexual abuse of the alleged victim by another person was admissible. He urged the "evidence is relevant to counteract the commonly held belief that children, such as the alleged victim herein, have no basis of knowledge of sexual activity unless they learned of such activity in the context of the abuse at issue." He further argued that a refusal to allow him to present such evidence would result in a denial of "due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Sections 9 & 10 of the Iowa Constitution." The court ruled the proposed evidence was prohibited by Iowa Rule of Evidence 412—the "rape shield" rule.

On appeal, Jones argues that the evidence is not subject to rule 412 and should have been admitted under a relevancy standard. In support of this argument, Jones claims the evidence he sought to admit was not in "reference to previous sexual *behavior* of the victim" because "previous inci-

dents of abuse cannot be characterized as 'behavior.'"

Jones also now claims the evidence was not to be used to show that the victim gained knowledge of sexual activity, but rather that the victim was confusing the incidents of her previous sexual abuse with her alleged abuse by Jones because of the "close proximity in time" in which the other abuse occurred.

A. The Applicability of Rule 412.

Rule 412 in part provides:

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual abuse, evidence of a victim's past sexual *behavior* ... is also not admissible, unless such evidence ... is:

(1) admitted in accordance with subdivisions "c"(1) and "c"(2) and is constitutionally required to be admitted; or ...

(Emphasis added.)

Jones argues that sexual activity of a victim of sexual abuse is not sexual behavior. He urges that behavior is defined as conduct. He claims that conduct is an affirmative rather than a reactive or passive action taken by a person. Therefore, being the victim of sexual abuse is not an affirmative act. Thus, he concludes that evidence of prior sexual abuse is not "prior sexual behavior of the victim" and rule 412 has no application. We are not persuaded.

▮ We think the term past sexual behavior as it is used in the rule clearly encompasses prior sexual abuse perpetrated upon the victim. Many other state and federal courts have found "rape shield" rules, identical or highly similar to Iowa Rule of Evidence 412, applicable to evidence of previous sexual abuse of a child victim. *See, e.g., United States v. Nez,* 661 F.2d 1203 (10th Cir.1981); *State v. Oliver,* 158 Ariz. 22, 760 P.2d 1071 (1988); *State v. Jacques,* 558 A.2d 706, 707 (Me.1989); *People v. Arenda,* 416 Mich. 1, 2–3, 330 N.W.2d 814, 815 (1982); *State v. Padilla,* 110 Wis.2d 414, 426–28, 329 N.W.2d 263, 270 (1982). *See also* Annotation, *Admissibility of Evidence that Juvenile Prosecuting Witness in Sex Offense Case had Pri-*

*or Sexual Experience for Purpose of Showing Alternative Source of Child's Ability to Describe Sex Acts,* 83 A.L.R.4th 685 (1991) [*Annotation*]; Note, *State v. Oliver: Children With a Past: The Admissibility of the Victim's Prior Sexual Experience in Child Molestation Cases,* 31 Ariz.L.Rev. 677, 685 (1989) (noting the "general consensus is that rape shield statutes do apply to cases involving minor victims") [*Note*]. *But see State v. Carver,* 37 Wash.App. 122, 678 P.2d 842 (1984), in which the court stated: "The evidence proffered in this case does not fit within the concepts and the purposes of the rape shield statute. First, the evidence sought to be admitted here was prior sexual *abuse,* not *misconduct* of a victim." *Id.* at 123, 678 P.2d at 843. This case is cited as the sole exception to the general consensus. *Note,* at 685 n. 74. We find the majority reasoning more persuasive.

B. Relevancy Analysis.

▮ After properly concluding that rule 412 was applicable to the evidence, the district court proceeded to conduct a relevancy analysis pursuant to rule 412(c)(3).

Subdivision 412(c)(3) is triggered when the past sexual behavior evidence is offered.

(A) ... upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(B) ... upon the issue of whether the alleged victim consented to the sexual behavior with respect to which sexual abuse is alleged.

Iowa R.Evid. 412(b)(2). The evidence sought to be admitted did not fit into either of these specific categories.

Rather, pursuant to the rule, the court should conduct the constitutional relevancy analysis required by rule 412(b)(1). *See, e.g., State v. Clarke,* 343 N.W.2d 158, 161–62 (Iowa 1984). We have reviewed the proffered evidence under rule 412(b)(1) and find that it is inadmissible. We therefore affirm the ruling of the court. *See Newmire v. Maxwell,* 161 N.W.2d 74, 80 (Iowa

1968) ("Where a learned judge's decision is right for a wrong reason it is nevertheless right.").

■ The initial determination in a constitutional analysis pertains to a defendant's right to present a defense.

> The constitutional provisions most often implicated in cases of this type are the sixth amendment right of confrontation and the fourteenth amendment due process right to a fair trial. The Constitution, however, ordinarily requires only the introduction of otherwise relevant and admissible evidence. Evidence that is irrelevant is not constitutionally required to be admitted.

*State v. Clarke*, 343 N.W.2d 158, 161 (Iowa 1984). *See also Oliver*, 760 P.2d at 1079. The defendant's constitutional rights must be weighed against the recognized interest that the State has "to (1) protect the privacy of the victims; (2) encourage the reporting and prosecuting of sex offenses; and (3) to prevent time-consuming and distracting inquiry into collateral matters." *State v. Gettier*, 438 N.W.2d 1, 3 (Iowa 1989).

■ A trial court can properly exclude evidence of the victim's prior sexual histories if the evidence were either irrelevant or more prejudicial than probative. *Clarke*, 343 N.W.2d at 161; *Oliver*, 760 P.2d at 1079. Such an analysis, although different, is highly similar to the relevancy analysis the court actually conducted. We proceed to analyze the evidence under this constitutional format.

■ Jones claims the evidence should be admitted for the purpose of showing an alternative source of the child's ability to describe the sex act perpetrated on her. However, at the time of the trial in this matter the victim witness was thirteen years old. In the three years between the abuse and the trial, the victim had been through sexual counseling and sex education programs at school. The district court found that "we are talking about a person who has at the time of this act reached the age where she had knowledge of sexual activity from other sources than actual sexual contact." We agree.

Given the age of the victim at the time she testified, the education and counseling she had received in the interim between the abuse and the trial, and the rather unexplicit nature of the testimony;[1] we find it unlikely that a jury would infer that the victim could only describe the act because Jones had, in fact, done it. *See Oliver*, 760 P.2d at 1080. The evidence of the victim's previous abuse is marginally relevant and is more prejudicial than probative. *See Annotation* §§ 4[b], [c], 14–15 (1991).

■ Jones also claims the evidence should be admitted to show that the child was actually confusing Jones' alleged sexual abuse with the previous abuse. We do not agree. First, the record reveals the alleged prior abuse occurred at least five years prior to the incident in question; the victim was then approximately five years old. There is no likelihood that the witness was confusing the incidents because of their proximity in time. Second, the prior incident involved different abuse. There is no likelihood that the victim was confusing the incidents because they involved completely different types of contact. *See Annotation* §§ 11–13.

Here, there is no constitutional requirement that the evidence be admitted. It is, at best, marginally relevant and is more prejudicial than probative for the purposes urged. Accordingly, the district court's conclusion was correct.

## IV. *Challenge to the Jury Panel.*

■ Jones' counsel made a pretrial motion challenging the jury panel. The challenge was made pursuant to Iowa Rule of Criminal Procedure 18(3) and alleged that the Scott County jury manager developed jury lists consisting solely of voter registration lists and drivers' license records in violation of Iowa Code section 607A.22 (1991). Jones urges the procedure used to compile the jury list violated the sixth amendment guaranty of a fair cross-section

---

1. The victim testified: A. He touched me and once licked me.... Q. Where would he touch you? A. On my vagina and breasts. Q. Where did he lick you? A. The vagina.

in his jury panel, the fourteenth amendment equal protection clause, and article one, section six and ten of the Iowa Constitution.

On the day of the trial, an omnibus hearing on all motions challenging jury panels for scheduled trials was conducted. At the hearing, both the district court administrator and jury manager testified as to the manner in which the jury pool was assembled. It was admitted that only two lists were used from which venire persons were selected: a voters' list and a motor vehicle operators' list.

Both the court administrator and the jury manager testified that utility lists were not usable because utility lists tend to be in the name of the head of household and would have a male bias. Evidence was offered that the National Center for State Courts recommends the use of voter and driver lists and that only those two lists be used. Other studies were submitted to show bias is reduced in a jury source list by combining voter and driver lists. The use of the combined list would closely reflect the population characteristics of the county.

Based upon the 1990 census, the population of Scott County· was approximately 108,000 persons. The African–American population in Scott County was approximately 4.1%, Hispanics comprise 2.7%, and other ethnic groups constituted 1.9% of the total population. The jury manager maintained statistical information based upon questionnaire answers of those summoned for jury duty. Of those who completed the optional questions as to race or ethnic group, approximately 3–3.5% indicated they were African–American.

After all evidence had been presented at the omnibus hearing, the court found that the jury manager had made an informed decision not to use the third list (the utility list) for it was not usable. The court found that the lists, as used, do return and represent a cross-section of the community and do not systematically exclude minorities or individuals by sex. Jones' motion challenging the jury panel was denied.

A. Constitutional Challenge.

 The sixth amendment to the United States Constitution entitles a criminal defendant to a jury panel designed to represent a fair cross-section of the community. *Holland v. Illinois*, 493 U.S. 474, 477, 110 S.Ct. 803, 805–06, 107 L.Ed.2d 905, 914 (1990); *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 701–02, 42 L.Ed.2d 690, 702 (1975); *State v. Knutson*, 220 N.W.2d 575, 577 (Iowa 1974) (holding same under Iowa Const. art. I, § 10); *State v. Lohr*, 266 N.W.2d 1, 4 (Iowa 1978) (the constitution recognizes that prospective jurors be drawn from a representative cross-section of the community, it prohibits systematic exclusion of any identified eligible group). A systematic exclusion of "distinct" segments of the community violates the constitutional requirement. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586–87 (1979). To establish a prima facie violation of the sixth amendment, the criminal defendant must show:

(1) [T]hat the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in the venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

*Id.; State v. Watkins*, 463 N.W.2d 411, 414 (Iowa 1990). If a prima facie case is established, the burden shifts to the State to demonstrate a justifiable reason for the disproportionate representation by showing that obtaining a fair cross-section is incompatible with a significant State interest. *Duren*, 439 U.S. at 368, 99 S.Ct. at 670–71, 58 L.Ed.2d at 589–90; *Watkins*, 463 N.W.2d at 415.

 Jones, an African–American, is a member of a distinctive group. However, the defendant has not proven that the representation of this group on the jury panel is not fair and reasonable in relation to the number of persons in that group in the community. There is no requirement that

the distinctive group or class be represented in exact proportions to the general population. *Hoyt v. Florida*, 368 U.S. 57, 69, 82 S.Ct. 159, 166–67, 7 L.Ed.2d 118, 126 (1961). Some deviation is to be expected. Therefore, only when this deviation becomes substantial is the fair cross-section requirement violated. Once a substantial underrepresentation of the defendant's group has been shown, a prima facie case has been established. *Castaneda v. Partida*, 430 U.S. 482, 495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, 511 (1977).

Jones urges the 8.7% minority population in Scott County had only 5.1% representation on the jury panel. Thus, the comparative disparity is forty-one percent. Comparative disparity is determined by taking the absolute disparity percentage and dividing that number by the percentage of the group in the total population. *United States v. Sanchez–Lopez*, 879 F.2d 541, 548 (9th Cir.1989).

We reject the argument that all minority groups should be compared with the total population. We compare only the distinctive group involved when determining if a prima facie case has been established. When considering group or total population figures, eligible jurors statistics would provide the more relevant figures.

We also reject reliance upon a comparative disparity statistical comparison. The absolute disparity computation has been used by the Supreme Court and is the appropriate method to be used. *Castaneda*, 430 U.S. at 495–96, 97 S.Ct. at 1280–81, 51 L.Ed.2d at 511. Absolute disparity is determined by taking the percentage of the distinct group in the population and subtracting from it the percentage of that group represented in the jury panel. *See Sanchez–Lopez*, 879 F.2d at 547; *United States v. Rodriquez*, 588 F.2d 1003, 1007 (5th Cir.1979). Here, the absolute disparity is the difference between 4.1% and 2.6% (two out of seventy-five in the jury panel) or 1.5%.

In *Swain v. Alabama*, 380 U.S. 202, 208–09, 85 S.Ct. 824, 829, 13 L.Ed.2d 759, 766 (1965), the underrepresentation of as much as ten percent as calculated by the absolute disparity concept, was insufficient to establish a prima facie case. The Eighth Circuit held that an absolute disparity of 7.2% did not represent a substantial underrepresentation of native Americans on the jury panel. *United States v. Clifford*, 640 F.2d 150, 155 (8th Cir.1981). Other federal circuit cases arising in districts where the distinct group is a small percentage of the general population have reached a similar conclusion. *See Sanchez–Lopez*, 879 F.2d at 547–49 (Hispanic 2.8% absolute disparity); *United States v. Armstrong*, 621 F.2d 951, 956 (9th Cir.1980) (African–American 2.8% absolute disparity); *United States v. Kleifgen*, 557 F.2d 1293, 1297 (9th Cir.1977) (African–American 1.9% absolute disparity); *United States v. Whitley*, 491 F.2d 1248, 1249 (8th Cir.1974) (African–American 2.05% absolute disparity).

Here, proof of a 1.5% absolute disparity fails to establish a prima facie violation of the sixth amendment. Nor has Jones established, as required by *Duren*, this disparity is due to a systematic exclusion of African–Americans in the jury selection process. Having failed to establish the second and third step for a prima facie case under *Duren*, Jones has not established a sixth amendment violation of the fair cross-section requirement.

The fourteenth amendment to the United States Constitution entitles a criminal defendant to equal protection of the laws. The courts have for more than 100 years recognized that racial groups cannot be excluded from the venire from which a jury is selected. This constitutional principle was first recognized under the equal protection clause of the fourteenth amendment prohibition of unequal treatment in general and racial discrimination in particular. *Holland*, 493 U.S. at 479, 110 S.Ct. at 806, 107 L.Ed.2d at 915. Later, in *Taylor*, the principle was recognized under the sixth amendment requirement of fair cross-section on the venire. *Id.* To show that an equal protection violation has occurred, the defendant must show that the procedure in selecting the venire resulted in substantial underrepresentation of the defendant's

race or group. *Castaneda*, 430 U.S. at 494, 97 S.Ct. at 1280, 51 L.Ed.2d at 510.

Upon our de novo review of the record we find Jones has failed to establish a prima facie case of a constitutional violation under either the sixth or fourteenth amendment or under our state constitution.

### B. Statutory Challenge.

■■■ Jones also challenges the assembly of the venire on statutory grounds. He claims the jury manager violated the provisions of Iowa Code section 607A.22 by only using jurors selected from two lists. Iowa Code section 607A.22 provides:

> The ... jury manager shall use all of the following source lists in preparing grand and petit jury lists:
>
> 1. The current voter registration list.
>
> 2. The current motor vehicle operators list.
>
> 3. Any other current comprehensive list of persons residing in the county, including but not limited to the lists of public utility customers, which the ... jury manager determines are suitable for the purpose of a jury source list.

We recently decided *State v. Johnson*, 476 N.W.2d 330 (Iowa 1991), in which a similar challenge was presented. Although we did not directly pass on the statutory challenge, we did make the following comment in a footnote:

> We also note, however, that section 607A.22(3) allows some discretion by ... jury managers concerning their use of public utility customers and other lists in addition to voter registration and motor vehicle operators lists. Arguably, a third list should not be used if its use would skew the demographics of the panel or further dilute minority representation in the pool, thereby negating a fair cross-section of the population achievable by use of the voter registration and motor

vehicle operators lists alone. *See* Iowa Code § 607A.1.

*Id.* at 333 n. 1.

Here, there was testimony by the district court administrator and the jury manager that use of utility lists would skew the demographics of the panel because of the characteristics of those persons who were the designated customers of the utility. The jury manager had the discretion to use only the two lists.[2] The refusal to use a utility list was not error.

### V. *Ineffective Assistance of Counsel.*

■■■ On appeal, Jones claims his trial counsel was ineffective because he did not obtain a hearing on the rule 412 motion as is provided by the rule. This is the sole basis for Jones' ineffective assistance claim, and he requested that the issue be preserved for postconviction relief.

Generally, ineffective-assistance-of-counsel claims are to be addressed in postconviction proceedings. *See, e.g., Jones v. State*, 479 N.W.2d 265, 271 (Iowa 1991). The defendant must establish two often-recited elements. *See, e.g., McKettrick*, 480 N.W.2d at 55.

> However, such claims may be adjudicated on direct appeal if there is a sufficient record available for a reviewing court to make a determination. Because a defendant must prove *both* incompetent representation *and* prejudice before succeeding on a claim of ineffective assistance of counsel, a reviewing court can affirm a conviction on direct appeal if the defendant has failed to prove prejudice, without deciding whether counsel's representation was incompetent.

*Id.* at 56. *See also Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984) ("If it is easier to dispose of ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Rule 412(c)(2) is clear in its language: "If the court determines that the offer of

---

**2.** The legislature has recently clarified the language of Iowa Code § 607A.22. *See* 3 Iowa Legis.Serv. 97 (West 1992). This section will now clearly state that the jury manager is to use the voters' and drivers' lists and may use any other list deemed usable. Our decision today is based upon our interpretation of the 1991 statute.

proof contains evidence described in subdivision 'b', the court *shall order a hearing* in chambers to determine if such evidence is admissible." (Emphasis added). Jones' counsel did not request a hearing be held, and no hearing was conducted.

Jones' motion clearly stated the legal basis and the reasons the evidence of prior sexual abuse was to be offered. The attached offer of proof was also clear as to what type of evidence would have been elicited. The court carefully considered the motion and it reached the proper conclusion. Although the court should have scheduled a hearing pursuant to the rule, we believe that even if a hearing had taken place a different result would not have been reached. Therefore, there is no reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Jones cannot show prejudice from the lack of a hearing on his rule 412 motion.

AFFIRMED.