**STATE of Iowa, Appellee,**

v.

**Charles D. WATKINS, Appellant.**

**No. 91–670.**

Court of Appeals of Iowa.

Oct. 27, 1992.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., John P. Sarcone, County Atty., and Nan Horvat, Asst. County Atty., for appellee.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ., but decided en banc.

SCHLEGEL, Judge.

Charles D. Watkins was accused of first-degree kidnapping and second-degree theft. Prior to the presentation of evidence, but after the jury was selected and sworn, Watkins challenged the jury panel on the grounds it failed to represent a fair cross section of the community, in violation of his Sixth–Amendment rights. The district

court refused to hold a hearing to determine whether there had been a systematic effort to exclude blacks from the jury panel.

On June 23, 1989, Watkins was convicted on both counts. On appeal, the supreme court affirmed his conviction on condition and remanded the case to the district court for a hearing on Watkins' Sixth–Amendment claim. *See State v. Watkins,* 463 N.W.2d 411, 416 (Iowa 1990). At the remand hearing Watkins introduced evidence that during the month of his trial only two of the 145 prospective jurors were minorities (one black and one Hispanic). Thus, only .69 percent of the members of the entire panel were black and only 1.38 percent were minorities. Further, evidence indicated that 4.54 percent of the 2050 jurors impaneled in 1989 were minorities. According to 1984 census figures, the non-white population of Polk County at that time was 7.16 percent.

On April 11, 1991, the district court ruled Watkins had failed to establish a prima facie case of disproportionate representation and refused to grant a new trial. Watkins filed a notice of appeal on April 29, 1991. He also filed a motion to reconsider on April 30, 1991, alleging the jury was not selected in accordance with Iowa Code section 607A.22 (1987). No ruling was entered on this motion.

On appeal, Watkins repeats his Sixth–Amendment challenge to the jury panel. He argues a comparative disparity analysis reveals there has been a substantial under-representation of minorities in jury panels in Polk County. He contends blacks have been systematically excluded from jury panels by (1) the use of only voter's registration and driver's license lists to compose the jury wheel, (2) the practice of indiscriminately excusing individuals from jury service without regard to race, and (3) the failure to improve the selection process by keeping racial statistics on those receiving jury notices and those actually reporting for jury duty.

Watkins further argues he was denied effective assistance of counsel due to his trial counsel's failure to timely object to the jury panel as being in violation of Iowa Code section 607A.22 (1987). *See State v. Johnson,* 476 N.W.2d 330, 333 (Iowa 1991). Watkins contends the ineffective assistance claim should be reserved for a postconviction relief action. The State responds the claim should be rejected on direct appeal due to lack of prejudice.

■ Our review is de novo based on the totality of the circumstances. *State v. Gregg,* 464 N.W.2d 431, 432 (Iowa 1990). A defendant challenging the composition of a jury panel must first establish a prima facie violation of the fair cross-section requirement under the Sixth Amendment. *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586–87 (1979). Once a prima facie violation is established the State has the burden to justify the infringement by showing the attainment of a fair cross section would be incompatible with a significant state interest. *Id.* at 368, 99 S.Ct. at 670–71, 58 L.Ed.2d at 589–90. In order to establish a prima facie violation, Watkins must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of this group in the jury selection process.

*Id.* at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 586–87. Watkins has clearly met the first requirement since the supreme court has held "blacks are a distinctive group in the community for purposes of a cross-section analysis." *Watkins,* 463 N.W.2d at 414.

■ The supreme court has recently decided *State v. Jones,* 490 N.W.2d 787 (Iowa 1992) in which it found Jones (an African–American) was a member of a distinctive group, and stated:

> [T]he defendant has not proven that the representation of this group on the jury panel is not fair and reasonable in relation to the number of persons in that group in the community. There is no requirement that the distinctive group or

class be represented in exact proportion to the general population. *Hoyt v. Florida,* 368 U.S. 57, 69, 82 S.Ct. 159, 166–67, 7 L.Ed.2d 118, 126 (1961). Some deviation is to be expected. *Therefore, only when this deviation becomes substantial is the fair cross-section requirement violated. Once a substantial underrepresentation of the defendant's group has been shown, a prima facie case has been established.* (Emphasis supplied.) *Castaneda v. Partida,* 430 U.S. 482, 495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, [511] (1977).

*Jones,* 490 N.W.2d 787, 792–93.

In *Jones,* the defendant urged that the 8.7 percent minority population in Scott County had only 5.1 percent representation on the jury panel, resulting in the comparative disparity being forty-one percent. The court further stated:

> Comparative disparity is determined by taking the absolute disparity percentage and dividing that number by the percentage of the group in the total population. (Citation omitted.)
>
> We reject the argument that all minority groups should be compared with the total population. We compare only the distinctive group involved when determining if a prima facie case has been established. When considering group or total population figures, eligible jurors statistics would provide the more relevant figures.
>
> We also reject reliance upon a comparative disparity statistical comparison. The absolute disparity computation has been used by the Supreme Court and is the appropriate method to be used. *Castaneda,* 430 U.S. at 495–96, 97 S.Ct. at 1280–81, 51 L.Ed.[2d] at [511]. *Absolute disparity is determined by taking the percentage of the distinct group in the population and subtracting from it the percentage of that group represented in the jury panel.* (Citations omitted.)

*Jones,* 490 N.W.2d 787, 793.

Following these principles in *Jones,* in which 4.1 percent of the population was African–American and two of the persons on the seventy-five person jury panel were African–American, the percentage of African–Americans on the jury panel was 2.6. The *absolute disparity* (the difference between the percentage of the distinct group (African–American) to the population and the percentage of that group represented in the jury panel) was 1.5 percent. *Id.* at 793.

In the instant case, the principles enunciated in *Jones* apply in determining whether a substantial underrepresentation of Watkins' ethnic group has been shown or a prima facie case of such underrepresentation has been established. The panel from which the *Watkins* jury was drawn consisted of 145 prospective jurors. Of this group, only one was black. This means the black juror represented .69 percent of that jury panel, whereas the black population of Polk County was shown to be 4.52 percent of the general population. Under the reasoning of *Jones,* the absolute disparity amounted to 3.83 percent.

Drawing upon the evidence presented concerning the population distribution and its comparison to the jurors impaneled in 1989, we find that of the 2050 jurors impaneled, sixty-nine were black. This constitutes 3.37 percent of the impaneled jurors. Under the instruction of *Jones,* this would cause an absolute disparity of 1.15 percent, assuming the black population of Polk County was 4.52 percent of the general population, as shown by the 1990 census figures.

It is interesting to note that while the absolute disparity in the jury panel from which Watkins' jury was selected was only 3.83 percent (a disparity which under *Swain v. Alabama,* 380 U.S. 202, 208–09, 85 S.Ct. 824, 829, 13 L.Ed.2d 759, 766 (1965), and *Jones* does not present a prima facie case of underrepresentation), that jury panel had approximately eighty-six percent fewer blacks than would have been indicated by the makeup of the jurors impaneled during 1989. In a 145–member jury panel 4.89 black members would be expected since 3.37 percent of the jurors impaneled in Polk County in 1989 were black. However, we are concerned here with the process of selection of the venire-

men as a whole throughout 1989. As shown above, in 1989 this process resulted in the selection of 3.37 percent African-American jurors, an absolute disparity of only 1.15 percent. Under these facts, the defendant has failed to establish a prima facie case of disparate selection.

▪ Defendant also urges us to find the jury selection process violates the statutory requirements regarding the method of selection. He contends the selection was made only from driver's license information and voter registration records, whereas the statute requires the use of a third source.

▪ We first observe that the remand of this case to the district court was for "an evidentiary hearing on the Sixth Amendment issue." *Watkins,* 463 N.W.2d at 415. In fact, the supreme court treated only the Sixth–Amendment issue in its ruling in the appeal. Watkins' challenge to the jury panel was based upon that provision of the constitution, specifically as follows:

> We feel that this challenge is based upon his Sixth Amendment right to the constitution of the United States, and [we] maintain that we should have a hearing to determine whether in fact there has been a conscious effort to exclude minority individuals from this jury panel.

In view of the limited nature of the remand by the supreme court, we hold the statutory violation claimed by the defendant is not before us. The defendant has waived that issue, first, by his failure to challenge the panel under the provisions of Iowa Rule of Criminal Procedure 17(3) and, second, by his failure to pursue that issue in the direct appeal of his convictions.

Under the facts of this case and the ruling of the supreme court in *Jones,* we hold there was no prima facie showing of substantial underrepresentation of defendant's racial group in this case. We find no Sixth–Amendment violation.

Accordingly, we affirm the trial court.

AFFIRMED.

All Judges concur, except SACKETT, J., who specially concurs.

SACKETT, Judge (specially concurring).

I concur with the majority opinion because the majority has correctly followed *State v. Jones,* 490 N.W.2d 787 (Iowa 1992), the most recent Iowa Supreme Court case addressing a challenge to the African-American representation on an Iowa jury panel. In *Jones,* our supreme court found an African-American defendant failed to establish his jury was drawn from a pool not representing a fair cross-section of the community, where the absolute disparity is 1.5 per cent but the comparative disparity was 41 per cent of this distinct group in the population. The unfortunate result of *Jones* is that it practically thwarts any nonwhite challenge to the nonwhite make-up of a jury panel in this state.

Our justice system is fairer when we include in the decision making a wide cross-section of our population. There is substantial support for the proposition that decision makers are fairer when the persons making the decisions come from different corners. Counter-balancing of various biases is critical to the accurate application of the common sense of the community to the facts of any given case. *Ballew v. Georgia,* 435 U.S. 223, 234, 98 S.Ct. 1029, 1036, 55 L.Ed.2d 234, 242–43 (1978). I feel it is extremely important that a nonwhite defendant has persons on his or her jury panel that are nonwhite and that the juror panel will be fairer and there will be less chance that the decision makers intentionally or unintentionally employ racial bias in the decision making process.

Additionally, in a state such as our's the small nonwhite population results in many cases where there is an absolute exclusion of nonwhites from jury panels, even if strict compliance with minority figures were followed. If a minority viewpoint is shared by 10 percent of the community, 28.2 percent of 12–member juries may be expected to have no minority representation, but 53.1 percent of 6–member juries would have none. 34 percent of 12–member panels could be expected to have two minority members, while only 11 percent of 6–member panels would have two. As the numbers diminish below six, even fewer

panels would have one member with the minority viewpoint and still fewer would have two. *Ballew,* 435 U.S. at 236, 98 S.Ct. at 1041, 55 L.Ed.2d at 244. The presence of minority viewpoint as juries decrease in size foretells problems for the representation of minority groups in the community. *Ballew,* 435 U.S. at 236, 98 S.Ct. at 1041, 55 L.Ed.2d at 244.

We are judges in a state where our numbers, save one, are white. Our appellate courts are exclusively white. We, therefore, have no nonwhite impute in our appellate decision making process. This puts an additional burden on each of us to continually sensitize ourselves to the need of assuring the absence of racial bias in our justice system.

Our supreme court has worked and established a commission to address gender and racial issues in our system. Perhaps our legislature will see the need and see that steps are taken to change the jury selection process to assure greater nonwhite representation, particularly in a criminal trial where the defendant is a nonwhite. When there are few nonwhites, then the possibility of nonwhite representation on the panel is not as great. *See Wright–Bey v. State,* 444 N.W.2d 772, 775 (Iowa App.1989).

I recognize there are problems obtaining nonwhites under current selection procedures. However, I do not see an awesome problem if we would come to grips and provide that, if necessary, lists can be used to call panels that have substantial representation in addition to the list now used. How much more fair to have nonwhites in a greater percentage than they appear in the population and how much more likely we would have nonwhites on jury panels.