**IN THE COURT OF APPEALS OF IOWA**

No. 20-1183
Filed September 22, 2021


**CHARLES HALL,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____


      Appeal from the Iowa District Court for Taylor County, Dustria A. Relph,

Judge.


      Charles Hall appeals the district court's denial of his postconviction relief

application.  As Hall fails to establish he received ineffective assistance of counsel,

we affirm.  **AFFIRMED.**


      Joey T. Hoover of Hoover Law Firm, P.L.L.C, Epworth, for appellant.

      Thomas J. Miller, Attorney General, and Martha Trout, Assistant Attorney

General, for appellee State.


      Considered by Vaitheswaran, P.J. and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Charles Hall appeals the district court's denial of his postconviction-relief (PCR) application. He alleges his counsel was ineffective for failing to request a change of venue and for failing to file a post-trial motion. As Hall fails to establish he received ineffective assistance of counsel, we affirm.

## I. Facts & Proceedings

Following the death of his three-year-old daughter, Hall was convicted of first-degree murder and child endangerment causing serious injury in January 2016. He appealed the conviction. Our court found there was insufficient evidence to support his conviction for child endangerment causing serious injury and remanded the case, ordering the trial court to enter judgment for the lesser-included offense of child endangerment causing bodily injury. *State v. Hall*, No. 16-030, 2017 WL 2461468, at *6 (Iowa Ct. App. June 7, 2017). Hall was sentenced to life imprisonment on the murder-in-the-first-degree conviction and to an indeterminate five-year period of incarceration on the child-endangerment-causing-bodily-injury conviction, with the terms to run concurrently to each other.

Hall filed the instant PCR application on August 25, 2017. He amended it on September 10, 2018. The application and amended application alleged several instances of ineffective assistance of counsel by his trial counsel. A hearing was held concerning the PCR application on July 9, 2020. The district court denied Hall's request for relief. Hall appeals.

## II. Standard of Review

Generally, we review district court decisions dismissing a PCR application for correction of errors at law. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa

2012). However, when an applicant asserts constitutional claims, we review de novo. *Id.* Therefore, we review claims of ineffective assistance of counsel de novo. *Id.*

## III. Analysis

Hall contends the district court erred in finding his trial counsel was not ineffective for failing to request a change of venue based on his assertions that he could not receive an impartial jury in Taylor County. He also argues the district court erred in finding his counsel was not ineffective in failing to move for a new trial based on the verdict being contrary to the weight of the evidence. We first address the law surrounding ineffective assistance claims in general and then turn to Hall's specific contentions.

### A. Ineffective Assistance of Counsel

To prove a claim of ineffective assistance of counsel, the applicant must show a breach of an essential duty and prejudice as a result of the breach of duty. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The applicant bears the burden of proving both prongs by a preponderance of the evidence. *Id.* "Failure to demonstrate either element is fatal to a claim." *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

To establish a breach of duty, the applicant must show that counsel performed below the standard of a reasonably competent attorney. *Ledezma*, 626 N.W.2d at 142. We begin with the presumption that the attorney performed competently. *Id.* Additionally, we "avoid second-guessing and hindsight." *Id.* A breach of duty is more likely to be established when the attorney's performance is attributable to a "lack of diligence as opposed to the exercise of judgment." *Id.*

The applicant must also establish prejudice. Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## B.     Motion to Change Venue

Hall argues his counsel was ineffective because counsel failed to move for a change in venue. He alleges jury-eligible African Americans make up only a small fraction of the total population of Taylor County. Hall additionally notes that most of that small fraction of the population was involved in the case as witnesses or was otherwise disqualified from serving on the jury. Therefore, according to Hall, it was impossible to have a jury pool that fairly represented his community. As a result, his counsel should have moved for a transfer of venue.

Iowa Rule of Criminal Procedure 2.11(10)(b) allows for a transfer of venue when "such a degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Hall argues that he did not have a fair and impartial trial because the jury pool was not a fair cross-section of his community. The Supreme Court set out a three-part test for establishing a fair-cross-section claim. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). An applicant establishes a prima facie case by showing:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this

underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* If the defendant establishes the prima facie case, the burden shifts to the state to justify the disproportionate jury pool by proving "a significant state interest" is "manifestly and primarily advanced" by the causes of the exclusion. *Id.* at 367.

Our supreme court recently altered the way an applicant demonstrates the second prong.[1] Prior to 2017, courts were limited to the absolute deviation test when deciding whether the jury pool fairly represented the community. *See, e.g.*, *State v. Jones*, 490 N.W.2d 787, 793 (Iowa 1992). However, *Plain v. State* held courts were not limited to the absolute deviation test, and could instead look to comparative disparity and standard deviations from the norm. 898 N.W.2d 801, 826 (Iowa 2017). Importantly, that change does not apply retroactively. *Thongvanh v. State*, 938 N.W.2d 2, 6 (Iowa 2020). Therefore, we review convictions entered before *Plain* under the absolute disparity test that was the law at the time. Hall's appeal was final on June 17, 2017, and *Plain* was decided on June 30, 2017. We determine *Plain* is not controlling in the present case. We are not at liberty to overturn Iowa Supreme court precedent. *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). Consequently, we apply the absolute disparity test.

Hall contends there is an absolute disparity of .001%.[2] That value falls far below the levels courts have upheld. *See, e.g.*, *State v. Huffaker*, 493 N.W.2d 832,

---

[1] The State does not dispute that African Americans are a distinctive group in Taylor County.

[2] Absolute disparity is measured by "taking the percentage of the distinct group in the population and subtracting from it the percentage of that group represented in the jury panel." *Jones*, 490 N.W.2d at 793. The district court relied on the U.S.

834 (Iowa 1992) (upholding 2.85% absolute disparity); *Jones*, 490 N.W.2d at 793 (upholding an absolute disparity of 1.5%); *Thongvanh v. State*, 494 N.W.2d 679, 683-84 (Iowa 1993) (upholding absolute disparity of .18%); *State v. Watkins*, 494 N.W.2d 438, 440-41 (Iowa Ct. App. 1992) (upholding 1.15% absolute disparity); *Robinson v. State*, No. 10-1337, 2013 WL 3458077, at *2 (Iowa Ct. App. July 10, 2013) (finding an absolute disparity of 2% "well under the percentages cited as non problematic"). Hall takes particular issue with the fact that it was functionally impossible to have an African American juror in his jury pool. However, "[t]here is no constitutional requirement that a class be represented in exact proportions to the general population." *Thongvanh*, 494 N.W.2d at 683; *see also Duren,* 439 U.S. at 364 n.20; *State v. King*, 225 N.W.2d 337, 342 (Iowa 1975) ("A criminal defendant's right to an impartial jury does not guarantee representation of his race on the jury panel."). Hall therefore fails to show that African Americans were not fairly represented in his jury pool.

Hall also fails to demonstrate that the lack of African Americans in the jury pool resulted from systematic exclusion. In order to prove systematic exclusion, the defendant must show that the underrepresentation is "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 367. Underrepresentation is inherent when there is "evidence of a statistical disparity *over time* that is attributable to the system for compiling jury pools." *Plain*, 898 N.W.2d at 824

Census Bureau's 2012-2016 American Community Survey 5-Year estimates to find that of the approximately 6209 individuals in Taylor County, only eight, or .001%, were adult African Americans. Hall does not challenge the percentage established by the district court and utilizes such percentage on appeal. Even if the parties had agreed to use a figure of .10%, which in decimal form is .001, it would not alter our conclusion.

(emphasis added). Hall makes no allegations that the system for selecting jury pools produced a racial disparity over time. The lack of African Americans in his jury pool stemmed from a very particular set of circumstances—an extremely small population that was mostly already involved in the case. Thus, there is no evidence of systematic exclusion.

Hall fails to establish the second and third prongs of *Duren*'s fair-cross-section claim. Therefore, he was not denied a fair jury pool, and a motion for a change of venue would have been without merit. We find no breach by trial counsel of an essential duty. The district court did not err in denying Hall's claim of ineffective assistance.

### C. Failure to File Motion for New Trial

Hall also argues the district court erred in finding his attorney was not ineffective for failing to request a new trial based on the weight of the evidence.[3] In order to succeed in his claim, Hall must show his counsel breached an essential duty by failing to file a motion for new trial, as well as a reasonable probability that the court would have granted a motion for a new trial had his attorney requested one. Courts grant a motion for a new trial based on the weight of the evidence when "the trier of fact [finds] that a greater amount of credible evidence supports

---

[3] We note there is considerable confusion over whether Hall claims his attorney was ineffective for failing to challenge the *sufficiency* or *weight* of the evidence. His PCR application stated, "Trial counsel were ineffective for not filing post-trial motions based on insufficient evidence." Importantly, trial counsel requested a grant of judgment of acquittal at the end of trial. Motions for judgment of acquittal are based on the sufficiency of the evidence, while a motion for new trial is based on weight of the evidence. *Nyugen v. State*, 707 N.W.2d 317, 327 (Iowa 2005). Because counsel made a post-trial motion in regards to sufficiency, we interpret Hall's claim to be for failure to motion for a new trial based on the weight of the evidence.

one side of an issue or cause than the other." *Nguyen*, 707 N.W.2d at 327. However, "the power to grant a new trial . . . should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* (citation omitted).

Hall contends that the autopsy and testimony by the medical examiner, as well as his former-girlfriend's testimony, were unreliable and cast sufficient doubt to undermine his conviction. As such, he claims his attorney should have filed a motion for a new trial. However, as the district court noted, "the jury heard the testimony of eleven witnesses besides [the medical examiner and former-girlfriend]. The jury viewed dozens of exhibits. The jury weighed the evidence and ultimately found Hall guilty of murder." While Hall points to a few, isolated issues of credibility, he fails to establish evidence that "preponderates heavily against the verdict." For that reason, it is not reasonably likely the outcome would have been different had his attorney filed the motion. As a result, the district court did not err in finding his attorney did not act ineffectively in failing to file the meritless motion nor in finding that the outcome of the trial would have been different if the motion had been filed.

**AFFIRMED.**