# IN THE COURT OF APPEALS OF IOWA

No. 22-1258
Filed January 10, 2024

**CHANJUOK OBUING ODHUNG,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, Judge.

　　Chanjuok Odhung appeals the denial of his application for postconviction relief. **AFFIRMED.**

　　Nicholas Einwalter, Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

　　Considered by Bower, C.J., and Tabor and Buller, JJ.

**TABOR, Judge.**

When Chanjuok Odhung directly appealed his first-degree robbery conviction three years ago, we advised him that he could only challenge his trial counsel's performance in a postconviction relief (PCR) action.[1]  He does so now. Odhung asserts two claims of ineffective assistance: (1) failure to protect his right to an impartial jury by raising a fair-cross-section challenge[2] and (2) failure to be more specific in moving for judgment of acquittal.  In a third claim, Odhung seeks retrial based on newly discovered evidence—an affidavit provided by his alleged accomplice stating Odhung was not involved in the planning and execution of the bank robbery.[3]

On the ineffective-assistance-of-counsel claims, Odhung failed to prove prejudice stemming from the performance of his trial or PCR attorneys.  As for the newly discovered evidence, we share the PCR court's view that it did not warrant a new trial.  We thus affirm the denial of relief.

### I. Facts and Prior Proceedings

In March 2019, nineteen-year-old Odhung led police on a high-speed chase through the streets of Des Moines in a red Mercury Mountaineer.  The chase ended when two patrol cars conducted PIT[4] maneuvers, spinning the fleeing vehicle and

---

[1] *State v. Odhung*, No. 19-1873, 2020 WL 5650551, at *1 (Iowa Ct. App. Sep. 23, 2020) (declining to address ineffective-assistance claims or to extend protections against cruel-and-unusual punishment for juveniles under *State v. Lyle*, 854 N.W.2d 378, 404 (Iowa 2014), to nineteen-year-old Odhung).

[2] Odhung blames both his trial attorney and PCR counsel for this alleged error.

[3] Odhung went to jury trial in September 2019.  His co-defendant Diamond Macon pleaded guilty to first-degree robbery, and he provided his affidavit to Odhung in January 2020.

[4] PIT stands for pursuit and intervention technique, according to the testimony of Officer Alycia Peterson.

blocking its path. At gunpoint, officers removed Odhung from the driver's seat; they also ordered seventeen-year-old Macon out of the rear passenger side. As Macon climbed out, a colorful backpack—tangled around his feet—fell on the roadway. Inside the backpack police found a handgun and cash recently stolen from the Great Western Bank. The State charged both Odhung and Macon with first-degree robbery.

At Odhung's trial, the State presented testimony from a customer who was making a drive-up deposit when he witnessed an armed robbery inside the bank. He saw tellers putting money into the robber's floral, multi-colored backpack. After calling 911, the customer followed the gunman, later identified as Macon, as he walked down an alley past a McDonald's restaurant. He saw the gunman hop into a red getaway vehicle about a block from the bank. The customer followed the getaway vehicle for several blocks until he was confident that law enforcement was in pursuit. The State also offered testimony from bank employees and several police officers involved in the chase and subsequent investigation.

Taking the stand in his own defense, Odhung acknowledged knowing Macon from school, but insisted they were not close friends. Odhung testified Macon called him the morning of the chase, asking if he wanted to go smoke some "weed." According to his testimony, Odhung then met Macon, who was driving the Mountaineer. They went to Macon's house where Macon changed into dark clothing. Macon asked Odhung if he wanted to drive. Macon then gave Odhung "directions on where to go." They parked near a McDonald's, and Odhung turned off the engine. Macon left the car saying, "he had something to do." Odhung recalled Macon taking something along that "had some colors on it." A few minutes

later, Macon "jumped" into the rear passenger seat holding a gun. Odhung said Macon pointed the gun at him and told him to drive. Odhung testified, "I felt that he was going to shoot me if I didn't do what he told me to do." Odhung told the jury that Macon was shouting directions. Noticing a car following, Macon commanded Odhung to "drive faster" and "lose them." Odhung testified, "My heart was pounding. I didn't know what to do. I felt like if I did anything less than what he told me, I would have died that day." Odhung claimed that he and Macon never discussed robbing anyone.

Rejecting his testimony, an all-white jury convicted Odhung of aiding and abetting first-degree robbery. The court sentenced him to a twenty-five-year prison term with a fifty-percent mandatory minimum.

After our court affirmed his conviction and sentence, Odhung petitioned for PCR alleging trial counsel Ronald Langford was ineffective (1) by not challenging the racial makeup of the jury pool and (2) by not focusing on Odhung's lack of knowledge in moving for judgment of acquittal. Odhung also argued that newly discovered evidence entitled him to a new trial, citing Macon's sworn statement that Odhung was unaware of his plan to rob the bank. PCR counsel called Macon and Odhung as witnesses. The State offered a deposition of attorney Langford as evidence. The PCR court rejected Odhung's ineffective-assistance claims for lack of prejudice. As for the newly-discovered-evidence claim, the court found that Odhung did not prove that Macon's post-verdict affidavit had a reasonable probability of changing the trial's outcome.

Odhung appeals.

## II. Scope and Standards of Review

We review PCR rulings for the correction of legal errors, unless they involve constitutional claims; then our review is de novo.  *More v. State*, 880 N.W.2d 487, 498 (Iowa 2016).[5]  We review Odhung's claim based on newly discovered evidence for corrections of errors at law.  *See id.*

## III. Analysis

## A. Ineffective Assistance of Counsel

To prevail on his claims of ineffective assistance of counsel, Odhung must prove (1) counsel breached an essential duty and (2) prejudice resulted.  *See Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012).  To show prejudice, he must prove "a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  His inability to prove either element dooms his case.  *See id.*  "[W]hen the claim is that counsel was ineffective in failing to move for judgment of acquittal, this implicates the question whether such a motion would have been meritorious, which turns on the sufficiency of evidence."  *State v. Henderson*, 908 N.W.2d 868, 874–75 (Iowa 2018).

*1.  Fair-cross-section claim.*

Both the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution guarantee the right to trial by an impartial jury.

---

[5] Although Odhung's right to effective assistance from PCR counsel is statutory rather than constitutional, we still review that claim de novo.  *See Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011); *see also Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (holding statutory right to counsel means the right to effective assistance of that counsel).

U.S. Const. amend VI; Iowa Const. art. I, § 10. To be impartial, a jury must be "drawn from a fair cross-section of the community." *State v. Williams*, 972 N.W.2d 720, 723 (Iowa 2022) (citation omitted).

To prove a prima facie violation of the fair-cross-section requirement, an accused must show that (1) the group alleged to be excluded is a "distinctive" faction in the community; (2) representation of this group in the jury venire is not fair and reasonable compared to the number of such persons in the community; and (3) this underrepresentation arises from systematic exclusion of the group in the jury-selection process. *State v. Plain*, 898 N.W.2d 801, 821–22 (2017).

Odhung—who is Black—first argues that his trial counsel was ineffective for not raising a fair-cross-section challenge. Attorney Langford recognized the panel assembled for Odhung's trial was all white. But Langford testified that he saw "plenty [of] minorities" that were part of the jury pool.[6] He testified that "when I walked into the courtroom and saw what we had, I said, 'Damn, I sure would have liked to have some of them other folks out there that—wherever they went, they went to other courtrooms.'" Langford said he understood the supreme court's rule to be "all you need is . . . a cross-section of community in the entire venire, here is what's required. We did not get not one of them." He acknowledged he did not look at jury statistics available for Polk County.[7]

---

[6] Our court has clarified the jury selection terminology: "[F]rom the community we draw the master jury list members; from the master jury list members we draw the pool; from the pool we draw the panel; from the panel we draw the potential jurors." *State v. Ford*, 992 N.W.2d 641, 642 (Iowa Ct. App. 2023) (footnotes omitted).

[7] When asked if looking at jury statistics was part of his practice, Langford testified "after [Plain] raised the issue up in Black Hawk County and then the court—you know, all these changes took place, yeah, I do now." *See* Russell E. Lovell II & David S. Walker, *Achieving Fair Cross-Section on Iowa Juries in the Post-*Plain

In critiquing Langford's representation, Odhung's PCR trial attorney incorrectly asserted that *State v. Jones*, 490 N.W.2d 787 (Iowa 1992),[8] had not been overruled at the time of the robbery trial. In reality, *Plain* abandoned the absolute-disparity test from *Jones* two years before Odhung's September 2019 criminal trial. *See* 898 N.W.2d at 824–27. Two cases expounding on *Plain—State v. Lilly*, 930 N.W.2d 293 (Iowa 2019), and *State v. Veal*, 930 N.W.2d 319 (Iowa 2019)—were also decided before Odhung's trial. Unfortunately, the county attorney and the district court accepted PCR counsel's assertion as true. The court ruled that Langford was not ineffective because he "would not have been expected to raise a futile challenge under *Jones* at the time he represented Mr. Odhung." But the district court also discussed prejudice, finding that Odhung "did not provide any evidence or substantive argument" to support his fair-cross-section claim.

As his first issue, Odhung argues the PCR court erred in rejecting his claim that Langford was ineffective for failing to challenge the make-up of the jury panel. But in the following section of his appellant's brief, Odhung acknowledges that "PCR [trial] counsel did not present any evidence regarding the purported racial

---

*World: the* Lilly-Veal-Williams *Trilogy*, 68 Drake L. Rev. 499, 523 (2020) ("State public defender Nichole Watt filed a motion asserting that Plain's Sixth Amendment right to a jury drawn from a fair cross-section of the community was violated as his jury pool had only 1 African American among 56 prospective jurors, or 1.8 percent of the pool compared to approximately 9 percent of the general population. The district court summarily rejected Plain's claim, and an all-white jury convicted him." (footnotes omitted)).

[8] In *Jones*, the court decided a challenge to a jury pool must be computed by the absolute disparity method: "Absolute disparity is determined by taking the percentage of the distinct group in the population and subtracting from it the percentage of that group represented in the jury panel." 490 N.W.2d at 793. The *Jones* court also noted that the United States Supreme Court "determined that 'the underrepresentation of as much as ten percent' did not establish a prima facie case." *Plain*, 898 N.W.2d at 825 (citation omitted).

disparity that was at the center of Odhung's claim." His brief then elaborates on what is missing and what is needed to prove that Odhung was prejudiced by Langford's omission.

> There is no census data offered to the court, either in testimony or affidavits. There is no calculations made regarding whether there is a disparity under any proposed calculation. We have no information provided or in the record regarding how Polk County selects jurors or determines eligibility. We know nothing about how these jurors are served or receive notice of their civic duty for us to know whether minorities face more difficult[ies].
> . . . . Further, because there is no information about the jury pool, practices used by the jury coordinator to fill their juries, or any analysis to determine whether these practices lead to any systemic exclusion of a distinctive group, the record is incomplete for the appellate court to make a ruling on this matter.

Odhung ultimately asks us to remand to the district court for "substitute counsel to prepare and present evidence relating to the claim that Odhung's jury was not a fair cross-section of his community at the time of his jury trial." Odhung notes that he is now precluded by Iowa Code section 822.3 (2020) from filing a second PCR, so a remand would be "his one opportunity to present this evidence."

The propriety of a remand is questionable. *See Brown v. State*, No. 22-0459, 2023 WL 3335384, at *1 (Iowa Ct. App. May 10, 2023) (avoiding question whether remand "would ever be proper to resolve a claim of ineffective assistance of PCR counsel"). When the record does not allow resolution of a claim of ineffective assistance of PCR counsel raised for the first time on appeal, our supreme court has rejected the idea of a remand, finding it would be "contrary to the symmetry of our appellate process and our role as a court of review." *Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018) (relying on *Allison v. State*, 914 N.W.2d 866 (Iowa 2018)). But since *Goode* was decided, the legislature has abrogated

*Allison*'s relation-back doctrine allowing second PCR applications. *See* Iowa Code § 822.3; *see also Brooks v. State*, 975 N.W.2d 444, 446 (Iowa Ct. App. 2022) (recognizing abrogation). Yet our supreme court has not revisited *Goode* since the abrogation of *Allison*. So, we must follow its holding. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent."). We thus reject Odhung's request for a remand to the PCR court for more evidence.

On this record, we cannot grant relief on Odhung's fair-cross-section claim raised through the structure of ineffective assistance of counsel.

*2. Motion for judgment of acquittal.*

Odhung next contends that attorney Langford was constitutionally remiss in not being more focused when moving for judgment of acquittal. In particular, he argues counsel should have challenged the State's proof that Odhung, as the getaway driver, knew that Macon was armed. *See Henderson*, 908 N.W.2d at 876 (requiring proof that aider and abettor *knew* dangerous weapon would be used to prove first-degree robbery).

Langford's motion after the State's case in chief was a bare: "Just briefly, Your Honor. Motion for judgment of acquittal without argument. That's it, Judge. And I know what the case law says, but that's my record." So too Langford's motion at the close of evidence: "At this time we would move the Court for a judgment of acquittal. Without argument, Your Honor." In his PCR deposition, Langford conceded, "I blew that one and that's all I can say."

After that concession, the district court found attorney Langford's performance deficient. But the court did not believe that Odhung proved that

counsel's mistake caused prejudice to his defense. The court decided that a more robust motion for judgment of acquittal would not have had a reasonable likelihood of changing the trial's outcome.

On our de novo review, we agree with the district court's reasoning. A reasonable jury could find Odhung joined the planning of the bank robbery and was aware Macon was armed. The jury could have disbelieved Odhung's claim that he barely knew Macon. Indeed, Odhung acknowledged smoking marijuana with Macon as many as ten times. And Macon called him around 7:30 the morning of the robbery. Odhung testified that Macon wanted to smoke "weed" and talk about the title to the Mercury Mountaineer.

According to Odhung, another friend, Brandon Johnson, asked for his help in acquiring the vehicle about one month before the robbery. When Odhung met Johnson at the car dealership, Macon was there too. Although Odhung signed the purchase agreement, he denied paying for the vehicle. The circumstances of that purchase raised more questions about Odhung's relationship with Macon. Odhung claimed to have signed the title as a favor to Johnson. But—like Odhung—Johnson was nineteen and could have signed the title himself. It was Macon who was only seventeen years old. Odhung said Macon later wanted the vehicle title in his name. And Macon was driving the Mountaineer on the morning of the robbery.

True, no witness testified Odhung saw or knew about Macon's gun before the robbery. But even the defense evidence accepted that Macon drove the Mountaineer to his house where he changed into dark clothing and returned carrying a bag. Then Odhung drove the Mountaineer north through Des Moines

to the rendezvous point, parking around the corner from the bank. As Macon left the vehicle, Odhung recalled him taking a colorful item out of the backseat. It was rational for the jury to conclude that Odhung—as the "drop-off driver"—would have seen the gun in the vehicle. *See Lilly*, 930 N.W.2d at 309 (distinguishing *Henderson*).

After Macon jumped back in the vehicle about five minutes later, Odhung led officers on a highspeed chase. A video from the pursuing patrol car shows Odhung weaving through traffic with skills suggesting he was aptly evading police rather than driving under compulsion. When police finally stopped Odhung with their PIT maneuvers, the video showed armed officers removing him from the vehicle. Attorney Langford recalled that "the image that came to mind was he just looked like a criminal that just got caught." After the chase, Odhung falsely told the police he was seventeen years old. The jury also heard Odhung's recorded call to his cousin from jail stating, "That shit was not worth it at all. So stupid. Now look where I'm at."

All told, the State presented substantial evidence from which the jury could infer Odhung participated in the planning of the robbery and knew Macon had a gun. So Odhung fails to prove that Langford's underwhelming motion for judgment of acquittal was prejudicial. *Id.* ("If evidence was sufficient to support the conviction, the motion would have been meritless, and Lilly cannot demonstrate that his counsel was ineffective.").

**B. Newly Discovered Evidence**

Odhung next contends Macon's affidavit and testimony at the PCR trial constitutes newly discovered evidence that warrants a new trial. Odhung asserts

that Macon's revelations were unavailable at the time of the robbery trial and "not discoverable because Macon's own charges were still pending[,] and he was represented by counsel and protected by his 5th Amendment rights."[9]

A person may seek PCR if evidence of material facts exists that was not previously presented and heard and, in the interest of justice, requires vacation of the conviction. Iowa Code § 822.2(1)(d). To prevail in a PCR action based on newly discovered evidence, Odhung must show that: (1) the evidence was discovered after the verdict; (2) it could not have been discovered earlier in the exercise of due diligence; (3) the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) the evidence probably would have changed the result of the trial. *See More*, 880 N.W.2d at 499. That last element is a high burden because of the societal interest in bringing finality to criminal litigation. *See Jones v. Scurr*, 316 N.W.2d 905, 910 (Iowa 1982).

The PCR court decided Odhung did not prove the last three elements. Focusing on Macon's affidavit, the court found that "Odhung knew and leveraged the theory that he was an unwitting participant in the robbery during trial." The court believed that the contents of the affidavit would have merely impeached the strong inferences that Odhung planned the robbery with Macon.

In this appeal, Odhung points to Macon's testimony at the PCR trial that Odhung planned to take him to school the morning of the robbery and the two did not discuss any plans to rob the bank. But he ignores Macon's testimony that he did not threaten or point a gun at Odhung during the police chase. That testimony

---

[9] The date of Macon's sentencing for his guilty plea to first-degree robbery does not appear in our record.

would impeach Odhung's trial testimony that he was compelled to drive the getaway car. And Macon's testimony that he called Odhung for a ride to school contradicts Odhung's testimony that Macon called him to smoke "weed." Macon also admitted at the PCR trial that he had "nothing to lose" in testifying for Odhung after pleading guilty. *See id.* ("In a case such as the present one, the already convicted codefendants have nothing to lose by making statements that exculpate defendant."). That admission would lessen his credibility before a jury.

At bottom, the PCR court had broad discretion to view the entire matter and decide whether Odhung had a fair trial and if the new evidence would probably have changed the result of the trial. *See State v. Uranga*, 950 N.W.2d 239, 243 (Iowa 2020) ("The district court is vested with '[u]nusually broad discretion' when 'ruling on a motion for new trial on the basis of newly discovered evidence.'" (alteration in original) (citation omitted)). We see no reason to interfere with that discretion on this record.

**AFFIRMED.**