STATE of Missouri, Respondent,

v.

**Larry D. CROSS, Appellant.**

**Larry D. CROSS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 46547, WD 48870.**

Missouri Court of Appeals, Western District.

Nov. 29, 1994.

7. The parties did not inform us of what the NCA claims administration was.

8. The original was in all capital letters.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and KENNEDY and BERREY, JJ.

BERREY, Judge.

Appellant was convicted by a jury of assault of a law enforcement officer in the first degree, § 565.081, RSMo 1986; assault of a law officer in the second degree, § 565.082;

robbery in the second degree, § 569.030; tampering in the first degree, § 569.080.1(2) and armed criminal action, § 571.015. Appellant was sentenced as a prior and persistent offender to life imprisonment plus 80 years. Appellant's Rule 29.15 motion was denied following an evidentiary hearing.

Rick Ring and Michael Chick are deputies on the Johnson County Sheriff's Department. On November 27, 1990, they responded to the Kingsville Livestock Auction to investigate possible stolen cattle. The deputies encountered two men, David Rathbun and appellant. These men were arrested and searched for weapons. They each carried a pocket knife and these were returned to them.

The officers requested identification and appellant produced a birth certificate bearing the name of "Robert Karigan." Both Rathbun and appellant were placed in Deputy Chick's patrol car. Chick then radioed their names to the dispatcher. During this time, Deputy Ring took Rathbun into custody and placed him in his patrol car. Appellant then got into the front seat of Chick's patrol car. Chick drove appellant to the main entrance of the sale barn. At some point, Deputy Chick learned that appellant did not match the description of Robert Karigan and requested that appellant produce a photo identification. Appellant then handed Chick his billfold in a "strange manner." Chick then discovered a driver's license in the name of Cross. At this time, appellant struck the deputy with his fist and then a metal flashlight. During the struggle, appellant obtained deputy Chick's service weapon, a nine millimeter Beretta. The deputy fled the car.

Deputy Ring then arrived in his cruiser and saw Chick's car pull out. Ring observed it was being operated by a person other than deputy Chick. Ring pulled his patrol car up to Chick's car and appellant began firing at Ring, several shots striking Ring's vehicle. Ring backed up and into a ditch and appellant drove slowly away. Ring fired a number of shots at the fleeing vehicle.

Appellant's vehicle was disabled and appellant exited it and fled on foot. Appellant was subsequently arrested on February 16, 1991, in Poteau, Oklahoma. He possessed a nine millimeter Beretta, identified as Chick's side arm.

Appellant raises four points of trial court error and one point of motion court error. 1) the trial court erred in denying appellant's motion to quash the jury panel because it was improperly selected; 2) the trial court erred in overruling appellant's objection categorizing the flash light as a "billy club;" 3) the trial court erred in not striking the entire venire panel because venireman Campbell had heard about the case on television; 4) the trial court erred in overruling appellant's objection during the state's closing argument because the prosecutor indirectly referred to appellant's failure to testify, and, 5) the motion court erred in denying appellant's Rule 29.15 motion because appellant was denied his right to effective assistance of counsel. Appellant's trial counsel failed to include in his motion for new trial objections to the testimony about the flashlight/"billy club" and the prosecuting attorney's indirect reference to appellant's failure to testify.

## I

■ In appellant's first point, he alleges the trial court erred in denying his pretrial motion to quash the jury panel because the jury was not selected in compliance with sections 494.400 through 494.505, RSMo Cum Supp.1990. More specifically, appellant alleges the master jury list obtained through the use of Cass County zip codes and driver's license numbers failed to include zip codes from two postal districts which had homes located in Cass County.

The master jury list was created from a list of Cass County zip codes sent to the court's administrator's office. Driver's license records were then used to randomly select individuals residing in those postal districts. Two zip codes were inadvertently excluded for postal districts that extended into Cass County. As a result, 244 Cass County homes were accidentally excluded from the master jury list. The parties stipulated that the population of persons age twenty and older in Cass County was 42,677.

Section 494.400, RSMo Supp.1990, provides that all persons qualified for petit jury ser-

vice "shall be selected at random from a *fair* cross section of the citizens of the county." (emphasis added). It further states, that a person "shall not be excluded from selection for possible grand or petit jury service on account of race, color, religion, sex, national origin, or economic status."

The procedures for compiling the master jury list of potential petit jurors are explained by § 494.410.1, RSMo Supp.1990, which provides in part:

> The board of jury commissioners shall compile and maintain a list of potential jurors... In compiling this list, to be known as the master jury list, the board of jury commissioners shall consult one or more public records. The master jury list shall be comprised of not less than five percent of the total population of the county ... as determined from the last decennial census. In no event shall the master jury list contain less than four hundred names ... The master jury list shall be the result of random selection of names from public records.

Section 494.465 provides that a party may move to stay the proceedings for "substantial failure to comply" with the provisions of these sections. This section further provides, "[i]f the court determines that in selecting ... a petit jury there has been *substantial failure* to comply with the declared policy of sections 494.400 to 494.505, the court shall stay the proceedings pending the selection of the jury in conformity with the declared policy or grant other appropriate relief." (emphasis added).

The procedures used by Cass County resulted in a master jury list that was drawn from approximately 99 percent of the counties' population eligible for jury service. The failure, in this case, to include 100 percent of the Cass County's population eligible for jury service, does not amount to a "substantial failure" to comply with sections 494.400 through 494.505. There was no evidence that the individuals in the pertinent postal districts were excluded upon the basis spelled out in § 494.400, RSMo Supp.1990. The jury panel was selected from a "fair" cross section of the citizens of Cass County.

Appellant cites *State v. Henke,* 820 S.W.2d 94 (Mo.App.1991) in support of his argument that the court administrator's office did not substantially comply with Chapter 494. In *Henke,* this court reversed the defendant's conviction for the jury commissioners, 1) failure to send statutory jury summons and qualification forms to the entire pool of 120 candidates; 2) disqualified candidates for reasons that were not recognized by statute, and, 3) did not notify the disqualified candidates of their disqualification. From the evidence in this case, we cannot make similar findings. Appellant's reliance upon *Henke* is misplaced.

Point I is denied.

## II

Point II alleges the trial court committed plain error in overruling appellant's objection to the testimony of Sheriff Charles Norman that the flashlight carried by officers was equivalent to a "billy club." Appellant contends the testimony invaded the province of the jury and any probative value it may have had was outweighed by its prejudicial affect. Appellant argues it was for the jury to determine whether the flashlight was a "dangerous instrument."

Appellant concedes in his motion under Rule 29.15 that his trial attorney opened the door to this testimony by asking Deputy Chick, on cross-examination, whether the deputy's flashlight, as used by appellant to strike him, was capable of causing death or a substantial risk of death. This line of questioning authorized the prosecutor to ask Sheriff Norman whether the flashlight was the equivalent of some other item that police officers carry. Sheriff Norman answered that the flashlight was equivalent to "a night stick or a billy club."

Appellant's trial counsel objected to the prosecutor's questions, but failed to include the alleged error in appellant's motion for new trial. As the alleged error has not been preserved for appellate review, it can only be considered as "plain error" under Rule 30.20. *State v. Mueller,* 872 S.W.2d 559, 564 (Mo. App.1994).

■ A defendant may obtain relief under Rule 30.20 only when the alleged error so substantially affects the rights of the accused that a manifest injustice or a miscarriage of justice would inexorably result if left uncorrected. *State v. Tate,* 850 S.W.2d 385, 388[8] (Mo.App.1993). The defendant bears the burden of demonstrating the alleged error rose to the level of manifest injustice or a miscarriage of justice. *State v. Collis,* 849 S.W.2d 660, 663 (Mo.App.1993). The defendant must show more than "mere prejudicial error." *State v. Kalagian,* 833 S.W.2d 431, 434 (Mo.App.1992).

There was no error of any type in the trial court's handling of this incident. The prosecutor's question was a relevant inquiry under the facts of the case, and a subject about which the Sheriff Norman was competent to testify. A flashlight identical to the one used to assault Deputy Chick, was admitted into evidence. The jury was capable of determining on its own whether the long, heavy, metal flashlight was a "dangerous instrument."

Point II is denied.

### III

■ In Point III, appellant alleges the trial court erred and abused its discretion in overruling his request that "publicity" voir dire be conducted at the bench, and in overruling his motion to strike the entire venire panel. Appellant contends the entire panel was tainted by venireman William Campbell's comment that he had heard about the case on television and radio and was aware that appellant was a "wanted man." Appellant argues this was an improper reference to other crimes of appellant from which the jury could have inferred his guilt.

■ The trial court has broad supervisory powers in the examination of prospective jurors. *State v. Gilmore,* 681 S.W.2d 934, 945 (Mo. banc 1984). This court will not interfere with those supervisory powers unless there is an clear abuse of discretion. *State v. Bullington,* 684 S.W.2d 52, 57 (Mo.App.1984).

■ The trial court is vested with broad discretion in determining whether a jury panel should be dismissed because of statements made by an individual juror. *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991). Its ruling will not be disturbed on appeal unless there is a clear abuse of discretion. *Id.* The trial court is in the best position to determine the content and impact of the juror's statements upon the other members of the panel. *State v. Wise,* 745 S.W.2d 776, 778 (Mo.App.1988). Therefore, appellate courts almost always defer to the trial court's judgment is such matters. *State v. Reed,* 789 S.W.2d 140, 142 (Mo.App.1990). The entire venire panel will be quashed only if a remark by an individual juror is so inflammatory and prejudicial that it deprives the defendant of his right to a fair trial. *Evans,* 802 S.W.2d at 514.

It seems apparent that Mr. Campbell's statement referred to the fact that appellant fled from Missouri following the incident and was apprehended in Poteau, Oklahoma several months later. This fact was introduced at trial. Mr. Campbell's remarks do not suggest that appellant was wanted for crimes other than those for which he was on trial. We also note that the prosecutor framed her questions so that they would not disclose any details of the case that they might have heard through the news media. The prosecutor told the jurors, "I don't want anybody to tell me what you read, what you heard, what you saw."

In this case, there was only one individual who offered a remark regarding what he heard through the news media. It seems apparent that the "wanted man" comment could only have been construed by the other members of the venire panel as referring only to the charges for which appellant was on trial. There was no evidence before the jury that appellant might have committed crimes other than the ones for which he was on trial. Mr. Campbell's remark does not warrant the disqualification of the entire jury panel.

Point III is denied.

### IV

■ In Point IV, appellant alleges the trial court committed plain error, within the meaning of Rule 30.20, in overruling his ob-

jection to the state's closing argument. Appellant contends the prosecutor made indirect reference to his failure to testify by stating in closing argument that there was "absolutely no evidence on the face of this earth that this defendant intended to give that firearm back to that police officer."

A defendant may obtain relief under Rule 30.20 only when the alleged error so substantially affects the rights of the accused that a manifest injustice or a miscarriage of justice would inexorably result if left uncorrected. *State v. Tate*, 850 S.W.2d 385, 388 (Mo.App. 1993). The defendant bears the burden of demonstrating the alleged error rose to the level of manifest injustice or a miscarriage of justice. *State v. Collis*, 849 S.W.2d 660, 663 (Mo.App.1993). The defendant must show more than "mere prejudicial error." *State v. Kalagian*, 833 S.W.2d 431, 434 (Mo.App. 1992).

The prosecutor in closing argument stated:

I wanted to direct your attention to Instruction Number 12, which says if you have a reasonable doubt as to whether the defendant took a firearm owned by Michael Chick for the purpose of withholding it from the owner permanently—ladies and gentlemen, there is absolutely no evidence on the face of this earth that this defendant intended to give that firearm back to that police officer.

Appellant's attorney objected, and stated that the prosecutor "was looking directly at the [appellant], nodding her head," when she said "no evidence," and that this remark constituted "a comment on the defendant's right not to testify." The trial judged overruled the objection and stated he "did not take that to be a comment on the defendant's refusal to testify."

Instruction No. 12 was a converse instruction submitted by appellant. It directed the appellant's acquittal of robbery if the jury had a reasonable doubt whether the appellant took Deputy Chick's firearm "for the purpose of withholding it from the owner permanently."

▮ An indirect reference to an accused's failure to testify is improper only if there is a calculated intent demonstrated by the prose-

cutor to magnify that decision so as to call it to the jury's attention. *State v. Lawhorn*, 762 S.W.2d 820, 826 (Mo. banc 1988). This court "will disturb the trial court's decision, when the prosecutor allegedly has alluded to a defendant's failure to testify, only where the references are *direct* and *certain*." (court's emphasis). *State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982).

▮ A statement that there has been "no evidence" presented on a particular issue is neither a direct nor indirect reference to the accused's failure to testify. *State v. Laws*, 854 S.W.2d 633, 636–637 (Mo.App.1993). In the case at bar, the prosecutor's "no evidence" comment was a permissible discussion of the evidence, especially with the submission of Instruction No. 12.

Point IV is denied.

## V

In appellant's fifth and final point, appellant alleges the motion court erred in denying his Rule 29.15 motion because he was denied his right to effective assistance of counsel. Appellant contends his trial counsel was ineffective because he, (1) failed to include in the motion for new trial and thereby preserve for appellate review objections to testimony that the flashlight equated to a "billy club," and (2) the prosecutor's closing argument in which she indirectly referred to appellant's failure to testify.

Our discussion of Points II and IV are dispositive of Point V. Point V is therefore denied.

The judgment is affirmed.

All concur.