STATE of Missouri, Respondent,

v.

Forrest Patrick KELLEY, Appellant.

No. WD 59459.

Missouri Court of Appeals,
Western District.

June 28, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 2002.

**38**

Richard E. McFadin, Gallatin, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., for Respondent.

Before ULRICH, P.J., BRECKENRIDGE and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Forrest Kelley was convicted of statutory sodomy and sentenced to fifteen years imprisonment. He raises four points on appeal: 1) the trial court erred in precluding evidence of the victim's sexual abuse allegations against other men pursuant to the rape shield statute, § 491.015 RSMo 2000 [1]; 2) the trial court erred in restricting Kelley's ability to rehabilitate a defense witness accused of lying under oath; 3) the trial court erred in denying Kelley's mistrial motion based on prejudicial comments of a venireperson; and 4) the trial court erred in denying the Motion for Judgment of Acquittal because the evidence was insufficient to support conviction on the sodomy charge.

We affirm.

### Factual & Procedural History

In July 1991, Forrest Kelley (Kelley) and a group of people were "mudding" on three-wheeler bikes in the Bedford area. H.S., five years old at the time, sat in front of Kelley on the bike, and her four-year old sister sat behind Kelley. H.S. wore a bikini top and bottom with a pair of shorts.

While mudding, H.S. asked Kelley if she could steer the three-wheeler. Kelley responded that she could steer, if he could touch her. Although H.S. did not understand what Kelley meant by touching, she grabbed the steering wheel. H.S. operated the bike over bumpy pathways at very high speeds. During this time, Kelley took both hands off the steering bars, reached his right hand down H.S.'s shorts, and placed his fingers into her vagina. When a few of H.S.'s relatives approached the three-wheeler, Kelley removed his hand from her shorts and stopped the bike. H.S. and her sister jumped off the bike and began to play in the mud.

H.S. did not inform anyone about the incident until sometime in 1998, approximately seven years later, when Kelley visited H.S.'s aunt. H.S. told her aunt about the 1991 incident and said she was afraid

---

**1.** Statutory citations are to the Revised Missouri Statutes 2000, except where otherwise noted.

that Kelley knew where she lived and would continue to visit.

Kelley was subsequently arrested and charged with statutory sodomy, a class B felony, § 566.060 RSMo 1986. The State filed a Motion in Limine pursuant to the rape shield statute, § 491.015, to prohibit Kelley from questioning any witnesses about H.S.'s allegations of sexual abuse against persons other than Kelley. Kelley opposed the motion and filed a Motion to Allow Evidence of Pattern of Conduct of Victim. After hearing, the court granted the State's motion and denied the defense motion. Kelley was convicted by a jury of statutory sodomy and sentenced to fifteen years imprisonment. He appeals.

## Proper Application of Rape Shield Statute

■ The rape shield statute, § 491.015, creates a presumption that evidence of a victim's prior sexual conduct is irrelevant to prosecutions for sex crimes. *State v. Smith*, 996 S.W.2d 518, 522 (Mo.App. W.D. 1999). The statute renders evidence of prior sexual conduct inadmissible unless it falls within one of four specific exceptions, and the trial court finds the conduct relevant to a material fact or issue. *State v. Sloan*, 912 S.W.2d 592, 598 (Mo.App. E.D. 1995). The exceptions include:

1. Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or

2. Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

3. Evidence of immediate surrounding circumstances of the alleged crime; or

4. Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

§ 491.015.1(1)-(4). Whether evidence is relevant is a matter for the trial court and reviewable only for an abuse of discretion. *Sloan*, 912 S.W.2d at 598.

Prior to trial, the State filed a Motion in Limine to preclude Kelley from questioning any witnesses about H.S.'s sexual abuse allegations against persons other than Kelley. The State argued that such questioning would elicit inadmissible evidence regarding the victim's prior sexual conduct. The court granted the motion and, at trial, allowed Kelley to make an offer of proof with H.S.'s testimony.

H.S. was fourteen years old at the time of trial in November 2000. During the offer of proof, H.S. testified that she had been sodomized by four men other than Kelley. She said her half-brother, Jeremy, had attempted to have sexual intercourse with her when she was five or six years old. Although she made a statement to the police regarding the incident, no criminal charges were filed against Jeremy. H.S. also reported to police that she was sodomized by Art Waldrep at the age of twelve. Charges were filed against Waldrep but later dismissed by the prosecutor. H.S. testified that in September 2000, two months prior to trial, she was sodomized by Kenny Yardley. Based on her complaint to police, charges were pending against Yardley at the time of Kelley's trial. H.S. further testified that she was sexually abused by another man whose name she did not know. She denied recanting any of the accusations and testified that the reported acts of sodomy had actually occurred.

The trial court rejected the offer of proof, refusing to allow the jury to hear any evidence of H.S.'s sodomy allegations against other men. On appeal, Kelley claims the evidence was admissible because it revealed a "pattern of conduct" in making sexual abuse allegations that is not precluded by the rape shield statute. Citing *State v. Lampley*, 859 S.W.2d 909 (Mo. App. E.D.1993), Kelley further argues that the victim's history of making such complaints is relevant evidence of her credibility, motive, and possible fabrication of the allegations against him.

In *Lampley*, the defendant was charged with sodomizing his nine-year old step-daughter, A.C. *Id.* at 910. A.C.'s previous sexual abuse allegation against another man had resulted in that man being removed from her home. *Id.* at 911. During A.C.'s cross-examination, the defense sought to introduce evidence of this prior allegation to show A.C.'s motive to fabricate similar charges against Lampley in order to have him removed from her home. *Id.* The trial court denied the inquiry because it dealt with the victim's prior sexual encounter. *Id.* at 910–911.

The appeals court reversed, holding that the cross-examination did not violate the rape shield statute because it was not necessary to go into details of the prior sexual abuse allegation to prove that the victim benefited from her prior complaint. *Id.* at 911. The court outlined a sample cross-examination, wherein the victim was simply asked whether she made a prior complaint against the other man and whether "something happen[ed] to make [her] happy" after the complaint. *Id.* at 912.

■ The proposed cross-examination in Lampley differs distinctly from the offer of proof at Kelley's trial. H.S.'s testimony, during the offer, was replete with references to prior acts of sodomy against her. Defense counsel asked, "Are these accusa-tions false," and H.S. replied "No." The offer included evidence that the sexual conduct actually occurred and, therefore, must be presumed inadmissible under the rape shield statute. Unlike Lampley, the evidence of H.S.'s prior sexual conduct was necessarily intertwined with her complaints, and the offer of proof was not constrained to solely elicit evidence to impugn her credibility or establish a motive for fabrication.

■ The trial court properly granted the State's Motion In Limine because Kelley failed to show that the evidence of H.S.'s prior sodomy complaints fell within any of the exceptions to the rape shield statute. Kelley also failed to show the relevance of these prior allegations to his defense of fabrication. H.S. testified that she had actually been sodomized by four other men, thus offering no support for Kelley's theory that she had a pattern of making false accusations. Point I is denied.

### Rehabilitation of Defense Witness

Appellant asserts the trial court erred in restricting his attempt to rehabilitate a defense witness, Sarah Waldrep, after Sarah testified on cross-examination that she lied under oath in a separate proceeding. Kelley failed to preserve this claim of error, as it was not included in his Motion for New Trial. He seeks plain error review for manifest injustice pursuant to Rule 30.20.

■ We have discretion to grant relief for plain error only upon strong, clear demonstration of an error so substantially affecting the defendant's rights that a miscarriage of justice will result if left uncorrected. *State v. Hyman*, 11 S.W.3d 838, 842 (Mo.App. W.D.2000). Plain error review is to be used sparingly and does not justify consideration of every alleged trial

error not preserved for review. *State v. Dowell*, 25 S.W.3d 594, 606 (Mo.App. W.D. 2000).

At the time of Kelley's trial, Sarah Waldrep had known H.S. for four or five years, and H.S. had been her best friend. On direct examination for the defense, Sarah testified that H.S. recently told her the sodomy allegations against Kelley were not true. The State impeached Sarah on cross-examination with her own acknowledgement that she previously lied under oath in a deposition unrelated to the Kelley case. The defense then sought to rehabilitate Sarah's credibility on re-direct by having her explain that the prior deposition involved H.S.'s sexual abuse charges against Sarah's father, Art Waldrep, and that the charges were subsequently dismissed. Kelley claims the trial court violated his due process rights by limiting the scope of redirect and precluding the jury from hearing Sarah's full explanation.

■ Our review of the record indicates Kelley had sufficient opportunities to rehabilitate Sarah's credibility on redirect examination. The trial court permitted Sarah to explain that the prior case involved her father and did not involve Kelley. The court further permitted defense counsel to examine Sarah as follows:

Q. Sarah, I hope this is not too confusing to you, but why did you lie in the case involving your father?

A. Because I was best friends and because [H.S.] always told me stuff and filled my head full of crap.

Q. Told you what?

A. She kept telling me stuff and kept telling me stuff and I believed her.

Q. Did she tell you to lie?

A. No, she just told me all of it.

Q. And what I'm getting at, Sarah, is why did you lie in your father's case?

A. Because I was believing her.

Q. And you believed her so you lied under oath, did you not?

A. Yes.

Q. All right. And did you—when you lied under oath you had an opportunity to recant that story, did you not? Now, what I mean recant, to change the story, say it was not true what she told you to say? Did she tell you to say things that were not true?

A. Yes.

This testimony adequately fulfilled the defense objective of explaining why Sarah gave false testimony in the unrelated case. The trial court only precluded defense counsel from inquiring about the nature of the case involving the prior deposition testimony, i.e. H.S.'s sodomy allegations against Art Waldrep. Information about the sodomy allegations was not essential to Sarah's explanation of her prior false testimony. The trial court properly excluded questioning on this subject because it was irrelevant to Sarah's credibility and was inadmissible under § 491.015 as evidence of H.S.' prior sexual conduct. Point II is denied.

### Denial of Mistrial Based on Venireperson's Remark

Appellant contends the trial court erred in denying his mistrial motion after a venireperson commented during jury selection that he knew about Kelley and could not be impartial. Appellant argues the comment implied that the venireperson had independent knowledge of Kelley's guilt. Kelley believes the comment "contaminated" the jury panel and deprived him of a fair trial by an "unbiased, unprejudiced jury."

■ The trial court is in the best position to determine the impact of a ju-

ror's statement upon other members of the panel. *State v. Cross*, 887 S.W.2d 789, 793 (Mo.App. W.D.1994). The court must consider whether the individual juror's remark is so inflammatory and prejudicial that it taints the entire jury panel and thereby deprives the defendant of a fair trial. *Id.* The declaration of a mistrial is a drastic remedy to be granted only in extraordinary circumstances where prejudice to the defendant can not be removed by any other means. *State v. Scurlock*, 998 S.W.2d 578, 589 (Mo.App. W.D.1999). We defer to the trial court's judgment in supervising jury selection and will not reverse absent an abuse of discretion. *Cross*, 887 S.W.2d at 793.

During voir dire, the prosecutor asked if anyone on the panel knew the defendant, Kelley. A number of venirepersons responded that they were acquainted with Kelley. Venireperson Ward stated that he had gone to high school with Kelley and attended several classes with him. Ward also had seen Kelley at the store where Ward worked. The following exchange occurred between the prosecutor and Ward:

Q. [Prosecuting Attorney]: Do you believe that you can set aside any opinion you might have formed about Mr. Kelley and judge this case solely on the evidence presented on the witness stand?

A. [Venireperson Ward]: No.

Q. Do you believe you have such a strongly held preconceived notion you can't be fair and impartial to both sides?

A. I know about Mr. Kelley, so, no, I could not be impartial.

At the conclusion of voir dire, defense counsel moved for a mistrial, asserting Ward's response contaminated the jury panel. The defense argued that the "nature of the remarks and direct tone of" Ward's voice could influence and negatively affect the entire panel's view of Kelley. The court overruled the motion, noting that Ward's tone of voice was "rather impassive."

We find no abuse of discretion in the trial court's denial of a mistrial under these circumstances. Venireperson Ward's comment was vague as to what he knew about Kelley. The comment did not refer to any prior bad acts of the defendant, nor clearly indicate that Ward had a negative view of Kelley. The trial court could consider this ambiguity and Ward's impassive tone in concluding that the comments were not so inflammatory as to prejudice the jury panel against Kelley. *Moss v. State*, 10 S.W.3d 508, 513 (Mo. banc.2000) (ambiguous comments, although arguably derogatory, do not support a finding that the jury panel is tainted). Point III is denied.

## Sufficiency of the Evidence

In his final point, Appellant challenges the sufficiency of the evidence to support his sodomy conviction. He contends there was no physical evidence of the crime, and that it is unlikely he could have sodomized H.S. while riding the three-wheeler at a fast speed over bumpy terrain. He points out that the victim's testimony was uncorroborated and, in fact, was contradicted by her admission to Sarah Waldrep that the allegations against Kelley were false. Appellant claims the court erred in denying his Motion for Judgment of Acquittal because the State failed to present sufficient evidence to warrant jury submission of the sodomy charge.

Our review on this point is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo.banc 1998).

We must accept as true all evidence and inferences favorable to the State and disregard all contrary evidence and inferences. *Id.* When reviewing the sufficiency of evidence in criminal cases, the appeals court "does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *Id.*

To obtain a conviction for the statutory sodomy, the State was required to prove that: 1) Kelley had deviate sexual intercourse with H.S.; 2) Kelley was not married to H.S.; and 3) H.S. was under the age of fourteen at the time the sodomy occurred. § 566.060 RSMo 1986. Deviate sexual intercourse is defined as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." § 566.010(2) RSMo 1986.

The State presented testimony from H.S. that Kelley placed his fingers in her vagina while riding the three-wheeler. H.S. was five-years-old and obviously unmarried at the time the incident occurred. Although uncorroborated, the victim's testimony is sufficient to sustain a conviction in cases involving sex offenses. *State v. Sladek,* 835 S.W.2d 308, 310 (Mo.banc 1992).

■ "Corroboration is not required unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful." *Id. (quoting State v. Harris,* 620 S.W.2d 349, 353 (Mo.banc 1981)). The "corroboration rule" is viewed with disfavor by Missouri courts and is restrictively applied only in cases where there are "gross inconsistencies and contradictions which bear on proof essential to a case." *State v. Nelson,* 818 S.W.2d 285, 288–89 (Mo.App. E.D.1991). Conflict between the testimony of the victim and other witnesses does not require application of the corroboration rule. *Sladek,* 835 S.W.2d at 310.

■ Kelley has failed to show that the testimony of H.S. was so grossly inconsistent with the overall facts and circumstances as to require corroboration. It is not inconceivable or physically impossible for the sodomy to have occurred while the victim and perpetrator sped along on a three-wheeler over rugged terrain. And, although Sarah Waldrep's testimony conflicted with the victim's allegations, there was undisputed evidence that Sarah had previously lied under oath. The jury was entitled to weigh the evidence and resolve the factual issues of whether Kelley committed the crime. We must defer to its judgment, as the evidence was sufficient for the jury to find Kelley guilty of sodomy beyond a reasonable doubt. Point IV is denied.

The judgment of the trial court is affirmed.

All concur.