Young, J.
(concurring). I concur in the decision to deny leave to appeal and write to respond to what I believe is Justice Markman’s artificially narrow definition of “conduct” — one that ultimately and ironically would give rape victims fewer privacy interests than prostitutes under the rape shield statute. I do not believe that the statute requires this result. I also write to respond to Chief Justice Kelly’s constitutional argument.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Because the dissenting statements offered by Chief Justice Kelly and Justice Markman contain significant gaps that fail to capture the ambulatory nature of the defendant’s claims of error, I offer the following complete and chronological recitation of the facts and the relevant procedural history of this case.
The complainant child, D.W, has experienced a troubled childhood. When she was three or four years old, her step-grandfather allegedly sexually abused her by fondling her and requiring her to perform fellatio on him. When she was five years old, she moved to Michigan to live with her mother and stepfather (defendant Ricky Allen Parks). There, she admitted to them that she had been sexually abused by her step-grandfather. Defendant recalled:
She had told us the stories about how her grandfather would have her in his bed at night and how he would touch her vaginal areas and then how he would make her touch his — what she called the weenie and how he had ... her put it in her mouth and talked about it getting sick on her belly and giving her medicines ....
D.W’s mother immediately contacted the Family Independence Agency (FLA)[1] in Owosso, which referred her to a physician. The physical examination conducted by the physician did not rule out fondling. The FIA investigator concluded that D.W “has either been exposed to an extreme amount of sexual activity or that she has been abused in the past, possibly with threats of physical harm were she to reveal what has taken place.” No charges were ever brought against D.W’s step-grandfather.
By November 2001, DW was 10 years old and living with defendant, his then-girlfriend, and five other children.[2] After DW exhibited age- *1041 inappropriate sexual knowledge and behavior at school, the school’s social worker interviewed her. During that interview, D.W stated that defendant had touched her in her vaginal area. The social worker then contacted Child Protective Services (CPS) regarding the allegations of sexual abuse. Although defendant denied the allegations, CPS placed D.W. in foster care. Further investigation led to additional details: D.W claimed that defendant twice followed her into the bathroom at their house and penetrated her, once with one of his fingers into her vagina and the other time with his penis into her mouth. Pursuant to MCL 750.520b, defendant was subsequently charged with two counts of first-degree criminal sexual conduct (CSC-I).[3]
At a motion in limine hearing, the prosecution sought to exclude evidence of the prior allegation that D.W. made against her step-grandfather. Defense counsel opposed the prosecutor’s motion, but on narrow grounds- — he sought to use the prior allegation “solely for impeachment purposes.” He explained that he anticipated asking D.W. whether “she had ever made any reports of any other types of activity .. . .” He expected “that [D.W] would say no,” as she did at a preliminary hearing, and he would then call other witnesses to testify that she had, in fact, previously made an allegation of sexual abuse. Thus, the then-ll-year-old complainant would be impeached. The trial court agreed with the prosecution and excluded the evidence under the rape shield statute.[4] Trial proceeded without evidence of D.W’s previous abuse, and the jury convicted defendant on both charged counts of CSC-I. He was subsequently sentenced to a term of 7 to 15 years’ imprisonment.
On appeal, defendant argued that he should have been allowed to question D.W to show that she had made similar false allegations in the *1042 past.[5] The Court of Appeals, in an unpublished opinion per curiam, issued May 18, 2004 (Docket No. 244553), affirmed defendant’s convictions and held that defendant failed to make an offer of proof with respect to the falsity of D.W.’s prior allegation, as required under MRE 103(a)(2).[6] Undeterred by the defendant’s failure to offer proof at the appropriate time, this Court accepted his argument and remanded to the Shiawassee Circuit Court for an evidentiary hearing to determine whether D.W. had, in fact, made a false accusation of sexual abuse against another person.[7]
On remand, the trial court affirmed defendant’s convictions, ruling that there was “absolutely no evidence, zero evidence!,] of any prior false accusations made by the child. . . .” This finding was based on the FIA investigator’s determination, contemporaneous with D.W’s allegation of abuse against her step-grandfather, that the young child “ha[d] either been exposed to an extreme amount of sexual activity or ... ha[d] been abused in the past.” Moreover, it was underscored by defendant’s own testimony that he believed D.W’s allegations against her step-grandfather to be true both at the time they were made and presently.
Defendant has abandoned his prior argument and, hoping that his third theory would be the charm, sought to introduce the evidence for yet another purpose: as an alternative explanation for D.W.’s age-inappropriate sexual knowledge and behavior. Under this theory, defen *1043 dant now claims that he is entitled to present evidence of the previous abuse D.W suffered to show that she obtained her age-inappropriate sexual knowledge and behavior from a source other than defendant.
Obviously, at the time of trial, defendant did not offer this third basis for the admission of DW’s alleged prior sexual abuse. Accordingly, this issue is unpreserved. Neither Justice Markman nor Chief Justice Kelly explains why the defendant should be allowed to maintain a theory of innocence that was neither articulated at the time of trial nor at the time of the defendant’s first appeal to this Court. Indeed, the tortuous procedural history of this case — including the defendant’s seriatim efforts to introduce the excluded evidence — is conspicuously absent from either of their dissenting statements. The failure to preserve the appropriate claim of error is, by itself, a sufficient — and my primary — basis for denial.
II. ANALYSIS
A. RAPE SHIELD STATUTE
Michigan’s rape shield statute,[8] enacted in 1974 as part of a comprehensive reform of Michigan’s criminal sexual assault statutes,[9] is a broad exclusionary rule that prohibits the introduction of evidence of a sexual assault victim’s previous sexual conduct, with certain narrow exceptions. Before the rape shield statute was enacted, sexual assault trials often focused on a victim’s sexual history rather than on the defendant’s alleged actions.[10] Thus, as this Court has previously explained, the enactment of rape shield laws across the country was “a reflection of a nationwide concern about the prosecution of sexual conduct cases.”[11]
The rape shield statute, MCL 750.520j, provides in part:
(1) Evidence of specific instances of the victim’s sexual conduct ... shall not be admitted under [MCL 750.520b to 750.520g] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
*1044 (a) Evidence of the victim’s past sexual conduct with the actor.
(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
At issue in this case is whether prior involuntary sexual activity — the sexual abuse D.W. allegedly suffered by her step-grandfather— constitutes “sexual conduct” for the purposes of the statute’s exclusionary rule. If such involuntary sexual activity does constitute “sexual conduct,” then the defendant is not entitled to question the complainant about such conduct. This includes a complainant’s previous allegations of sexual abuse not proven to be false.[12]
The Legislature did not specifically define the term “conduct.” Therefore, it is appropriate to look to the dictionary definition to discern the term’s meaning.[13] “Conduct” is relevantly defined as one’s “personal behavior.”[14] This definition is silent about whether “conduct” encompasses only voluntary “personal behavior” or both voluntary and involuntary “personal behavior.” The term’s plain meaning in the criminal context, however, implies that both voluntary behavior and involuntary behavior are “conduct.” Justice MARKMAN’s understanding of the term “conduct” artificially restricts the term to one’s voluntary behavior only. Instead, it encompasses all of one’s “personal behavior.”[15]
*1045 An examination of the statutory scheme as a whole underscores why Justice Markman’s construction of “conduct” is too limited. MCL 750.520a provides definitions for Chapter LXXVI of the Michigan Penal Code, which encompasses the rape shield statute (MCL 750.520j). Although the section does not define the word “conduct,” it does define both “actor” and “victim” with reference to their “conduct.” An “actor” is someone “accused of criminal sexual conduct,” MCL 750.520a(a), while a “victim” is someone “subjected to criminal sexual conduct,” MCL 750.520a(p). By including these definitions, the Legislature expressed its understanding that “sexual conduct” is something that both “actors” and “victims” take part in — “actors” voluntarily and “victims” involuntarily. The protections of the rape shield statute, therefore, do not distinguish involuntary “sexual conduct” experienced as a victim of sexual abuse from voluntary “sexual conduct” engaged in as a consenting adult. To hold otherwise would presume that the Legislature intended to give prostitutes more protection than rape victims. I do not think the plain meaning of the term “conduct” within the context of the statute conveys that particular legislative intent.
Moreover, a discarded draft of this provision supports this natural construction of the phrase “sexual conduct.” “[B]y comparing alternate legislative drafts, a court may be able to discern the intended meaning for the language actually enacted.”[16] The bill, as introduced in the Senate on February 28, 1974, originally provided that “[pjrior consensual sexual activity between the victim and any person other than the actor shall not be admitted into evidence in prosecutions under sections 520B to 520I.”[17] The House subsequently amended the bill and passed a substitute bill that deleted the word “consensual.”[18] It is that House substitute bill that was enacted into law instead of the bill that was initially proposed.[19] Therefore, the fact that the Legislature specifically deleted the word “consensual” provides additional support for the conclusion that the rape shield statute applies to both consensual and nonconsensual sexual conduct.[20]
*1046 This is consistent with our caselaw applying the rape shield statute to victims of prior sexual abuse. In Arenda, this Court prohibited the admission, under the rape shield statute, of “any evidence of sexual conduct between the victim [an eight-year-old boy] and any person other than defendant.”[21] Likewise, People v Morse articulated a specific test for admitting evidence of a complainant’s prior sexual abuse notwithstanding the applicability of the rape shield statute.[22]
While not controlling the interpretation of this state’s statute, it is nevertheless reassuring that nearly all states ruling on this question have *1047 read their rape shield protections as encompassing both voluntary sexual conduct and involuntary sexual conduct. Twenty other states specifically hold that sexual abuse falls under rape shield protections.[23] Only three *1048 states concur with Justice Markman in denying the applicability of rape shield provisions to involuntary sexual abuse.[24] A fourth, New Hampshire, *1049 has enacted a statute expressly limiting exclusion to consensual sexual conduct.[25]
Ultimately, there is a strong textual basis for concluding that the term “conduct,” as it is used in the rape shield statute, encompasses both voluntary and involuntary behavior. The Legislature’s decision to enact a broad exclusionary rule containing limited and specific exceptions is itself a policy decision,[26] which must be respected unless it is unconstitutional.
B. CONSTITUTIONAL CHALLENGE TO THE RAPE SHIELD STATUTE
Notwithstanding the requirements of the rape shield statute, a criminal defendant has the constitutional right to present a defense. The Sixth Amendment of the United States Constitution and art 1, § 20, of the Michigan Constitution contain identical provisions giving a criminal defendant the right to “be confronted with the witnesses against him . . . .”[27] In interpreting the Confrontation Clause, the United States Supreme Court maintains that the right to present a defense is a fundamental right afforded to criminal defendants.[28] Nevertheless, it is not absolute. The protections of the Sixth Amendment may “bow to accommodate other legitimate interests in the criminal trial process.”[29] Indeed, courts have “ ‘wide latitude’ to limit reasonably a criminal defendant’s right to cross-examine a witness ‘based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that is repetitive or only marginally relevant.’ ”[30]
This Corut’s decision in People v Hackett requires a court to determine the constitutionality of exclusion of evidence under the rape shield statute on a case-by-case basis,[31] as long as “[t]he defendant... makefs] an offer of proof as to the proposed evidence and... demonstrate^] its *1050 relevance to the purpose for which it is sought to be admitted.”[32] Only-then does a trial court possess the relevant information to decide whether a defendant is constitutionally entitled to present particular evidence excluded under the rape shield statute.
Here, defendant has only offered proof that the prior allegations were relevant to D.W.’s credibility. The Constitution does not require evidence of sexual conduct, such as these prior allegations, to be introduced when the defendant’s only proffered reason for introducing such evidence is to wage a general attack on a witness’s credibility, as opposed to a specific attack on a witness’s “possible biases, prejudices, or ulterior motives . . . .”[33] The Sixth Circuit Court of Appeals decision in Boggs v Collins is instructive on this point:
No matter how central an accuser’s credibility is to a case— indeed, her credibility will almost always be the cornerstone of a rape or sexual assault case, even if there is physical evidence — the Constitution does not require that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct.[34]
Our Legislature has determined that the fact that a complainant had been abused in the past is simply irrelevant to her present credibility. This would seem to be an especially important policy when such prior sexual abuse occurred when DW could have been as young as three years old and when DW made her prior allegations of abuse when she was five years old.
Defendant’s latest and third argument for introducing the evidence —explaining DW’s age-inappropriate sexual knowledge and behavior — is somewhat more compelling.[35] By failing to introduce this theory of admissibility at tried, however, defendant has forfeited it and *1051 bears the burden to show: “1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights.”[36] And, if defendant can meet his burden, this Court must exercise its discretion to reverse only when “the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.”[37]
Defendant has failed to show that error occurred, much less that it was clear or obvious. As noted earlier, the constitutional right to present a defense must be balanced against the state’s interest in protecting the integrity of criminal sexual conduct trials and the privacy of complainants. Hackett expressed that constitutional concerns might trump the rape shield statute when showing (on a proper offer of proof) that the complainant’s prior victimization is probative of her bias or ulterior motive against the criminal defendant.[38] Defendant does not make such a claim here.
The Court of Appeals decision in People v Morse held that, before a jury may hear evidence of prior sexual abuse against a complainant, the trial judge must determine (at an in camera hearing): (1) that the proffered evidence is relevant, (2) that another person was convicted of criminal sexual conduct (CSC) involving the complainant, and (3) that the facts underlying the previous conviction are significantly similar to the case before it.[39]
Because D.W’s step-grandfather was not charged with CSC, let alone convicted of such a crime, evidence of previous abuse is not eligible for introduction at trial under Morse. Morse appropriately balanced the defendant’s necessity for introducing a defense with the state’s interests in protecting the integrity of CSC trials and the privacy of complainants. It is much less invasive to a complainant if the previous abuse suffered is already a matter of public record that had previously been examined in *1052 open court. Accordingly, there is no compelling justification for extending this test to previous acts of CSC committed against a complainant that have not already withstood the publicity of a trial.[40]
Defendant is, therefore, not constitutionally entitled to introduce evidence of the previous abuse D.W suffered. Accordingly, he is not entitled to a new trial.
III. CONCLUSION
For the reasons stated, I concur in this Court’s decision to deny leave to appeal. D.W’s prior sexual victimization is covered under the plain meaning of the rape shield statute, and the exclusion of that evidence pursuant to the statute did not violate defendant’s constitutional rights. Accordingly, he is not entitled to a new trial.
CORRIGAN, J. I join the statement of Justice Young.

 The FLA is now known as the Department of Human Services.

 Defendant had custody of three children, including DW, while his then-girlfriend had three other children of her own. As Justice Markman’s dissenting statement indicates, D.W’s mother had moved out of state and left her children with defendant after she was apparently charged with drug offenses.

 MCL 750.520b(l) provides: “A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person ... if... (a) [t]hat other person is under 13 years of age.” MCL 750.520a(o) defines “sexual penetration” as “sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person’s body or of any object into the genital or anal openings of another person’s body, but emission of semen is not required.”

 MCL 750.520j provides, in pertinent part:
(1) Evidence of specific instances of the victim’s sexual conduct ... shall not be admitted under [MCL 750.520b to 750.520g] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
(a) Evidence of the victim’s past sexual conduct with the actor.
(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

 Under both the plain meaning of the statute and this Court’s precedent in People v Jackson, 477 Mich 1019 (2007), the rape shield statute does not encompass false allegations of sexual abuse made by a complainant, because false allegations of sexual abuse are not “sexual conduct.”

 MRE 103(a) provides, “Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... (2)... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.”

 People v Parks, 478 Mich 910 (2007). I joined in Justice Corrigan’s dissenting statement, which is worth repeating here, in pertinent part:
I respectfully dissent from the majority’s decision to remand this case to the trial court for an evidentiary hearing, and to thereby give defendant a second chance to offer proof that the complainant made a prior false accusation of sexual abuse against another person. The majority ignores the fact that defendant already had an opportunity to offer proof of the alleged falsity of the prior accusation, and that he failed to do so. Under the plain language of MRE 103(a), error may not be predicated on the exclusion of evidence where no offer of proof was made. Yet the majority, for reasons that it wholly fails to explain, now gives defendant a second bite at the apple, in contravention of MRE 103(a). [Id. at 912 (CORRIGAN, J., dissenting) (emphasis in original).]

 MCL 750.520j.

 MCL 750.520a et seq.

 See, e.g., People v McLean, 71 Mich 309, 312 (1888) (“Evidence that the prosecutrix is a common prostitute, or that her character for chastity is bad, is admissible.”). The rape shield statute was aimed at putting to rest the mindset expressed by Chief Justice Cooley in another context, that “[t]he probability that a woman who conducts herself properly will be frequently assaulted is very small . . . .” Derwin v Parsons, 52 Mich 425, 427 (1884).

 People v Arenda, 416 Mich 1, 8 (1982).

 See People v Jackson, 477 Mich at 1019.

 People v Thompson, 477 Mich 146, 151-152 (2007).

 Random House Webster’s College Dictionary (1997). This is the longstanding definition of the term. See Webster, A Compendious Dictionary of the English Language (New York, NY: Crown Publishers, 1970 facsimile of 1806 edition), p 61 (“behavior”).

 The criminal defense of duress aptly illustrates why Justice Maekman’s construction is underinclusive. Someone who maintains a duress defense admits that otherwise criminal acts are part of his “conduct,” but seeks to excuse it as involuntary. Thus, though involuntary, the act remains a person’s conduct. People v Merhige, 212 Mich 601, 610-611 (1920), states the rule of duress: “An act which would otherwise constitute a crime may also be excused on the ground that it was done under compulsion or duress. The compulsion which will excuse a criminal act, however, must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done.” (Quotation marks and citation omitted.) Particularly telling is the Court’s subsequent discussion: “Whether the defendant was responsible for his conduct on September 19th and whether his actions on that occasion were voluntary, would be a fair question for a jury under all the circumstances of the case.” Id. at 611 (emphasis added). Rather than being “a single, stray reference to [conduct],” as Justice Makkman indicates, post at 1064, this understanding of “conduct” as encompassing all of one’s “personal behavior,” not just volitional behavior, illustrates a foundation of our criminal law. *1045 Moreover, the alleged criminal sexual conduct that took place between D.W and her step-grandfather — fondling and fellatio — requires (at least) two participants. The fact that, with respect to D W, this alleged sexual conduct was forced is not relevant to whether it was “conduct” within the meaning of the statute.

 In re Certified Question (Kenneth Henes Special Projects v Continental Biomass Industries, Inc), 468 Mich 109, 115 n 5 (2003).

 SB 1207, § 520J(2). (Emphasis added.)

 1974 Journal of the House 4356-4363.

 1974 Journal of the Senate 1495-1499. See also 1974 PA 266.

 Justice Markman correctly states that the enacted version of the bill replaced the phrase “consensual sexual activity” with the phrase “sexual conduct.” Nevertheless, his argument that the two terms are identical *1046 does not take into account the fact that amendments of the definitional provisions in the statute provide additional support for a distinction between “consensual sexual activity” and “sexual conduct.” The enacted version of the definitional provisions relating to criminal sexual conduct defined “actor” and “victim” as participants in “sexual conduct.” In the original SB 1207, however, the provisions defined “actor” and “victim” without reference to their “sexual conduct.” “Actor” was defined as “a person accused of sexual assault,” SB 1207, § 520A(A), while “victim” was defined as “the person alleging to have been sexually assaulted,” § 520A(J). When the word “consensual” was deleted from the statute, those definitions were amended to reference the parties’ participation in “sexual conduct,” the “actor” as someone “accused of criminal sexual conduct,” MCL 750.520a(a), and the “victim” as someone “subjected to criminal sexual conduct,” MCL 750.520a(p). Thus, even if Justice Markman’s distinction between “conduct” and “activity” were valid, the amendment of the definitional provision that contemplates an expansive understanding of “sexual conduct” puts his distinction to rest and incorporates both consensual sexual conduct and nonconsensual sexual conduct.

 Arenda, 416 Mich at 6 (emphasis added). While Justice Markman correctly notes that Arenda primarily dealt with the constitutionality of the rape shield statute, its application of the rape shield statute is very relevant to this case. The victim in that case was an eight-year-old boy, and the defendant sought to cross-examine the victim regarding whether he had engaged in any previous sexual activity. Moreover, the defendant sought to introduce the evidence to explain an alternative basis for the victim’s age-inappropriate sexual knowledge. The Court excluded evidence of all instances of sexual conduct between the eight-year-old victim and any person other than the defendant. The Court did not make any distinction between voluntary sexual conduct and involuntary sexual conduct.

 231 Mich App 424 (1998). The Morse panel specifically discussed the applicability of the statute: “In Michigan, as in our sister states, rape-shield statutes are typically invoked where the victim is an adult. However, our courts and others have ruled on the applicability of rape-shield statutes in cases of child sexual abuse.” Id. at 430, citing Arenda, 416 Mich at 6.

 See State v Townsend, 366 Ark 152, 160 (2006) (“[E]vidence of the prior sexual abuse of a minor is within the ambit of the rape-shield statute.”); People v Aldrich, 849 P2d 821, 824 (Colo App, 1992) (“[T]he rape shield statute encompasses involuntary acts within the meaning of prior sexual conduct . . . .”); Baughman v State, 528 NE2d 78, 79 (Ind, 1988) (“Appellant contends that the trial court erred by preventing him from presenting evidence that [the victim] had been sexually molested by her step-father .... The evidence sought to be introduced was of the type which the legislature deemed should be excluded in a case of this nature. It falls clearly within the parameters of the statute . . . .”); State v Jones, 490 NW2d 787, 790 (Iowa, 1992) (“We think the term [‘]past sexual behavior[’] as it is used in the rule clearly encompasses prior sexual abuse perpetrated upon the victim.”); State v Michel, 633 So 2d 941, 944 (La App, 1994) (“[Louisiana’s rape shield law] was correctly applied in this case to prevent any exploration of a possible sexual molestation of the victim in 1988.”); State v Jacques, 558 A2d 706, 708 n 2 (Me, 1989) (“We reject, as providing insufficient protection to victims, the defendant’s proposed interpretation of ‘sexual behavior’ to apply only to a victim’s ‘volitional sexual behavior.’ ”); Commonwealth v Hynes, 40 Mass App 927, 929 (1998) (“Evidence of sexual abuse by a third party is generally excluded under the rape-shield statute.”); State v Carpenter, 459 NW2d 121, 125-126 (Minn, 1990) (“The excluded evidence at issue here [is] the alleged prior digital penetration of [the victim] .... We find, as did the trial court, the evidence of previous sexual conduct defense counsel sought to introduce to be inadmissible under [Minnesota’s rape shield law].”); Peterson v State, 671 So 2d 647, 657 (Miss 1996) (“[Mississippi’s rape shield law] prohibits the introduction of evidence of a victim’s past sexual behavior unless it falls under one of the three exceptions .... The question [at issue] was not whether she had made any false allegations of a past sexual offense [which are admissible] . .., rather it was whether she had made any allegations at all of such an offense and is therefore improper.”); State v Kelley, 83 SW3d 36, 40 (Mo App, 2002) (“The offer included evidence that the sexual [abuse] actually occurred and, therefore, must be presumed inadmissible under the rape shield statute.”); State v Rhyne, 253 Mont 513, 519 (1992) (“[U]nder [Montana’s rape shield law], sexual conduct of the victim which is inadmissible includes prior sexual abuse.”); State v Bass, 121 NC App 306, 309-310 (1996) (“We conclude that the prior abuse alleged here is “sexual activity” within the ambit of [North Carolina’s rape shield law].”); State v Budis, 125 NJ 519, 532-533 *1048 (1991) (“When a defendant seeks to elicit evidence of the prior sexual abuse of a Child, the Rape Shield Statute directs trial courts to conduct a pre-trial in camera hearing.”); State v Montoya, 91 NM 752, 753 (NM App, 1978) (“Sexual intercourse is sexual conduct whether by consent or force. [New Mexico’s rape shield law] is not limited to sex by consent; rather, by its unlimited wording, it applies to all forms of past sexual conduct.”); State v Smelcer, 89 Ohio App 3d 115, 122 (1993) (“The trial court refused to allow the admission of the evidence, stating that the rape shield law precluded evidence concerning prior sexual abuse of [the victim]. We find that this evidence was properly excluded.”); State v Wright, 97 Or App 401, 406 (1989) (“We hold that ‘past sexual behavior’ means a volitional or non-volitional physical act that the victim has performed for the purpose of the sexual stimulation or gratification of either the victim or another person or an act that is sexual intercourse, deviate sexual intercourse or sexual contact, or an attempt to engage in such an act, between the victim and another person.”); Commonwealth v Johnson, 389 Pa Super 184, 188 (1989) (“[Assaultive sexual activity is covered by the Rape Shield Law . . . Ex parte Rose, 704 SW2d 751, 756 (Tex Crim App, 1984) (“Reading the phrase or term ‘sexual conduct’ in the context in which it is used in [Texas’s rape shield law] and in accordance with common usage, we hold that it encompasses sexual activity or conduct whether willingly engaged in or not . . . .”); State v Quinn, 200 W Va 432, 438 (1997) (“[E]vidence that the alleged victim of a sexual offense has made statements about being the victim of sexual misconduct, other than the statements that the alleged victim has made about the defendant and that are at issue in the state’s case against the defendant, is evidence of the alleged victim’s ‘sexual conduct’ and is within the scope of West Virginia’s rape shield law. .. unless the defendant establishes to the satisfaction of the trial judge outside of the presence of the jury that there is a strong probability that the alleged victim’s other statements are false.”); State v Pulizzano, 155 Wis 2d 633, 643 (1990) (“The prior sexual assault [the victim] experienced clearly constitutes ‘sexual conduct’ as that term is defined in [Wisconsin’s rape shield law].”).

 Raines v State, 191 Ga App 743, 744 (1989) (“[A] prior rape committed against the victim has nothing whatsoever to do with her past sexual behavior.”); Chapman v State, 117 Nev 1, 5 (2001) (“A child-victim’s prior sexual experiences may be admissible to counteract the jury’s perception that a young child would not have the knowledge or experience necessary to describe a sexual assault unless it had actually happened.”); State v Markle, 118 Wash 2d 424, 438 (1992) (“[The] rape shield statute does not provide a basis for excluding evidence of prior sexual abuse of the complaining witness . . . .”).

 NH Rev Stat Ann 632-A:6(II) provides that “fp]rior consensual sexual activity between the victim and any person other than the actor shall not be admitted into evidence in any prosecution -under this chapter.”

 See Nelson, What is textualism?, 91 Va L R 347, 398-403 (2005).

 The Sixth Amendment of the United States Constitution was held applicable to the states through the Fourteenth Amendment in Pointer v Texas, 380 US 400, 406 (1965).

 Crane v Kentucky, 476 US 683, 690 (1986). Additionally, art 1, § 13, of the Michigan Constitution provides that “[a] suitor in any court of this state has the right to ... defend his suit, either in his own proper person or by an attorney.” See also People v Hayes, 421 Mich 271, 278 (1984).

 Michigan v Lucas, 500 US 145, 150 (1991) (quotation marks and citations omitted).

 Id. at 149, quoting Delaware v Van Arsdall, 475 US 673, 679 (1986).

 People v Hackett, 421 Mich 338 (1984).

 Id. at 350.

 Davis v Alaska, 415 US 308, 316 (1974).

 Boggs v Collins, 226 F3d 728, 740 (CA 6, 2000).

 Defendant’s new theory, however, is not without its holes: because DW was abused as a very young child, she might be especially able to recognize and describe the abuse she is alleged to have suffered from defendant. Indeed she had her own childishly graphic terms for a penis (“weenie”), ejaculation (“[the weenie] got sick”), and ejaculate (“medicine”). Chief Justice Kelly, however, struggling to bolster the relevance of the evidence, suggests that D.W. cannot use similar language to describe similar events that happened to her. Her explanation fails to persuade. The graphic terms that D.W. used to describe the alleged instances of sexual abuse were part of her own vocabulary. The mere fact that she has this unique vocabulary to describe all the alleged instances of sexual abuse does not make it “extremely unlikely” for D.W. to have been abused both by her step-grandfather and by defendant. Post at 1056. If Chief Justice Kelly “[does] not suggest[] that D.W.’s behavior encouraged someone to sexually abuse her,” id. at *1051 1056 n 14, she nevertheless does suggest that, in order to be believed, a victim of sexual abuse had better come up with a different way to describe any subsequent abuse she suffers. I see little to effectively distinguish this “one and done” rule for sexual assault victims, that “[i]t is extremely unlikely that both defendant and D.W’s [step-]grandfather abused DW in the same manner,” id., from the nineteenth-century sensibility that the rape shield statute intended to put to rest: that “[t]he probability that a woman who conducts herself properly will be frequently assaulted is very small . . . . ” Derwin, 52 Mich at 427.

 People v Carines, 460 Mich 750, 763 (1999).

 Id. at 774.

 Hackett, 421 Mich at 348.

 Morse, 231 Mich App at 437. Like defendant’s latest argument, the defendant in Morse sought to introduce the evidence in order to provide an alternate source for the complainant’s age-inappropriate sexual knowledge.

 Justice Markman implies that defendant had no way of defending against the medical expert’s conclusion that D.W had likely been abused. This is simply incorrect. There was nothing to prevent the defendant from questioning the causal relationship between the witness’s conclusion and the abuse that defendant was charged with committing; he simply was barred from exploring the causal relationship between the witness’s testimony and D.W’s alleged previous abuse.